## PHOENIX INS. CO. v. WARTTEMBERG.

(Circuit Court of Appeals, Ninth Circuit. February 23, 1897.)

FIRE INSURANCE — MISREPRESENTATIONS IN APPLICATION — INTERPRETATION OF FACTS BY AGENT.

When an applicant for insurance has told the soliciting agent of the insurance company the facts in relation to an incumbrance on the property it is proposed to insure, and the agent, asserting that such facts are not material, has inserted in the application which is signed by the applicant a statement that there is no incumbrance on the property, but there is nothing to show that the company would have declined the risk if it had

known of the incumbrance, nor that either the insured or the agent perpetrated any fraud on the company, the insurance company, in case of a loss, is liable upon a policy issued upon such application, notwithstanding it contains a stipulation that any false answer in the application should render it void. Insurance Co. v. Fletcher, 6 Sup. Ct. 837, 117 U. S. 519, distinguished.

In Error to the Circuit Court of the United States for the Northern Division of the District of Idaho.

Forney, Smith & Moore and James H. Forney, for plaintiff in error.
Eugene O'Neill and James E. Babb, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The defendant in error was the plaintiff in an action which was brought against the Phœnix Insurance Company to recover, upon a policy of fire insurance, the loss and damage by fire to the property of Peter Thompson. On October 23, 1893, Peter Thompson made a written application for insurance to the amount of $3,500, upon his barn, hay, grain header, binder, and other farming implements, with the loss, if any, payable to C. Warttemberg, mortgagee. One of the defenses made by the insurance company to the action was that the insured, in his written application, had falsely warranted that the property upon which the insurance was sought was not incumbered. The insurance was obtained through one R. D. McConnell an agent of the insurance company residing at Moscow, Idaho, and, when the policy was delivered to the insured, it bore the indorsement, "McConnell & Cobbs, Agents." The application contained the following:

"It is expressly understood and agreed that the valuation of all the property herein described is made by the applicant, and, if this blank be filled out by the agent, it is done at dictation of applicant, and every statement herein contained is to be deemed his own. This company will be bound by no statement made to or by the agent, unless embodied in writing herein."

The policy contained also the following:

"This insurance is based upon the representation contained in the assured's application of even number herewith, on file in the company's office in San Francisco, each and every statement of which is hereby specifically made and warranted and a part hereof; and it is agreed that, if any false statements are made in said application, this policy shall be void."

And the following:

"No agent or employé of this company, or any other person or persons, have power or authority to waive or alter any of the terms or conditions of this policy, except only the general agent at San Francisco. Any waiver or alteration by them must be in writing."

At the trial, the plaintiff, in answer to the question, "What, if any, answer was made to this question in the application, 'Is the personal property incumbered? If so, in what manner and what amount?'" testified as follows:

"A. I told him it was mortgaged to John P. Volmer, First National Bank of Lewiston, for $1,000. Q. State the whole conversation at that time. A. And he says, 'Are you going to pay it?' I told him I was going to pay it off right away, and he said that did not make any material difference if I was going to pay it off right away, and he would write the word, 'No.'"

It was proven that at the time the insurance was applied for, on October 23, 1893, there was upon a portion of the personal property a mortgage for $1,000. On October 27th the insured paid $500 on account of the mortgage debt, and on November 20th made a further payment of $300, leaving about $300 still due on principal and interest at the time of the fire, which occurred on December 21, 1893. The insured testified, further, that the agent of the insurance company came to his place, and wanted to insure his property, and that, when he finally agreed to insure, the agent "made out an application and insured the property"; that the application was not read to him at the time; that he had dealings with no other person than the agent with reference to the insurance; and that the agent at the time claimed to represent the Phœnix Insurance Company of Brooklyn; and that the policy was sent to him by the agent. There is no evidence that the agent gave any information to the insured concerning the limitations of his agency or the nature thereof. It appeared, upon his own testimony, that the agent had authority to write commercial risks for the Phœnix Insurance Company in towns in Idaho, such as Moscow, Kendrick, Leland, and other places, but that he had no authority to write insurance on farm risks; and that he was required to forward all applications on farm risks for the company's inspection and acceptance. The jury returned a verdict for the plaintiff for $1,800. Under the instructions of the court, they found by their verdict that the conversation which the plaintiff alleged was had between him and the agent occurred as by him detailed. On the submission of the case to the jury, the plaintiff in error requested the court to instruct the jury to return a verdict for the defendant. The request was denied, and an exception was allowed, and thereon is based the principal assignment of error on which the case is presented in this court.

The plaintiff in error cites the case of Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, and urges that, under its authority, we are compelled to reverse the judgment of the trial court. In that case the applicant for life insurance made his application in St. Louis, to an agent of a New York insurance company. He made answers to the questions propounded to him by the agent, which, if correctly written down, would have made a material difference in the nature of the risk. The agent, without his knowledge, wrote down false answers, concealing the truth. The applicant signed the application without reading it, and the agent transmitted it to the company. Thereupon a policy was issued which contained the express condition that the answers in the application were a part of the policy, and that no statement made to the agent not contained in the application should be binding on the company. A copy of the answers, with these conditions conspicuously printed upon it, accompanied the policy. It was held that the policy was void. Mr. Justice Field, in delivering the opinion of the court, said:

"It is conceded that the statements and representations contained in the answers, as written, of the assured, to the questions propounded to him in his application, respecting his past and present health, were material to the risk to be assumed by the company, and that the insurance was made upon the

face of them, and upon his agreement accompanying them that, if they were false in any respect, the policy to be issued upon them should be void. It is sought to meet and overcome the force of this conceded fact by proof that he never made the statements and representations to which his name is signed; that he truthfully answered those questions; that false answers written by an agent of the company were inserted in place of those actually given, and were forwarded with the application to the home office. * * * It was his duty to read the application he signed. He knew that upon it the policy would be issued, if issued at all. It would introduce great uncertainty in all business transactions if a party making written proposals for a contract, with representations to induce its execution, should be allowed to show, after it had been obtained, that he did not know the contents of his proposals, and to enforce it, notwithstanding their falsity as to matters essential to its obligation and validity. Contracts could not be made, or business fairly conducted, if such a rule should prevail; and there is no reason why it should be applied merely to contracts of insurance. There is nothing in their nature which distinguishes them in this particular from others."

The court proceeded to distinguish the case from Insurance Co. v. Wilkinson, 13 Wall. 222, and from Insurance Co. v. Mahone, 21 Wall. 152, and said:

"In neither of these cases was any limitation upon the power of the agent brought to the notice of the assured. * * * Here the power of the agent was limited, and notice of such limitation given by being embodied in the application which the assured was required to make and sign, and which, as we have stated, he must be presumed to have, read. He is therefore bound by its statements."

It is contended by the defendant in error that the doctrine of the Fletcher Case has been modified by subsequent decisions of the supreme court, and we are referred to Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87, in support of that proposition. That was a case in its facts and principles essentially identical with the case now before the court. The applicant for insurance stated in his application, in answer to the question whether he had other insurance, that he had certain certificates of membership in co-operative societies. The agent informed him that he did not consider such certificates insurance, and gave his reasons for so stating, and wrote the answer "No" in the application. But the decision of the court involved no modification of the doctrine of the Fletcher Case. It was based expressly upon the statute of Iowa, in which state the contract of insurance had been made, providing that "any person who shall hereafter solicit insurance, or procure applications therefor, shall be held to be the soliciting agent of the insurance company or association issuing the policy on such application, or on a renewal thereof, anything in the application or policy to the contrary notwithstanding." The court held that an agent procuring an application for life insurance in that state became, by force of the statute, the agent of the company, and that if he filled up the application, or made representations, or gave advice as to the character of the answers to be given by the applicant, his acts in these respects were the acts of the insurer. There is no intimation in the opinion of what would have been the ruling of the court in the absence of a statute. In Idaho, unfortunately, there is no statute similar to that of Iowa. We find no other decision of the supreme court subsequent to the Fletcher Case which in any way modifies that case. But we are not

disposed to apply the doctrine of that case further than to the state of facts under which the decision was rendered. The controlling fact in that case was that fraud had been perpetrated upon the insurance company by its agent, whether with or without the connivance of the assured. The fraud consisted in the concealment of facts by the agent, who wrote false answers to the questions which he propounded to the applicant. In the opinion it is said that, if the company had been aware of the true state of facts, the risk would probably not have been assumed. There is nothing in the record in the case now before us to show that the insurance company would have declined the risk if it had been aware of the fact that a portion of the property on which insurance was sought was under a temporary incumbrance, which was to be shortly paid off by the insured. Nor is there anything in the record to show that either the insured or the agent perpetrated fraud upon the insurance company. The applicant truthfully stated the facts to the agent, and the latter advised him concerning the force of those facts, and placed a construction upon them by writing the answer as he did in the printed application. The clause of the contract of insurance by the force of which it is contended that the misstatement contained in the application amounts to a breach of warranty is this: "This company will be bound by no statement made to or by the agent unless embodied in writing herein;" and the stipulation of the policy to the effect that any false statement in the application should render the policy void. It is not stated, either in the policy or in the application or in the evidence, that the agent was not the agent of the insurance company. The jury have found, in effect, that the insured stated the facts concerning the incumbrance on his property truthfully and in good faith, and that an answer different from that which he gave was written in the application by the agent, and assented to by the insured, in consequence of his trust and confidence in the superior knowledge and information of the agent. It appears also that the insured, in good faith, was proceeding to pay off, and had paid off, the greater portion of the incumbrance before the fire occurred, which was but two months after the date of the application. It would be a harsh doctrine, indeed, to hold that insurance companies shall have the opportunity of perpetrating such wrong and injustice as would result from the application of the ruling in the Fletcher Case to the facts presented in the present case. It is well known that insurance is usually effected, especially upon farm property, by agents who travel through the country supplied with the printed blanks of the insurance companies for the purpose of taking applications, and forwarding them to their home offices. The applicant for insurance naturally relies upon the statements of him whose business it is to procure insurance, and the agent should not have it in his power, while obtaining premiums from the insured for the enrichment of his company, to absolve the latter from liability on its policies, provided he can, either honestly or otherwise, induce the applicant to adopt in his application such construction as the agent may persuade him to believe is proper to be placed upon the facts which he has honestly detailed.

The judgment will be affirmed, with costs to the defendant in error.