plication of the defendants. There the corporation was dissolved; here all that appears is that a receiver was appointed. But the main distinction, and one that, apart from these differences in facts, would be controlling, is that the language of the two agreements is entirely different. This remark is equally applicable to the other cases cited.

Furthermore, we think it would be both inequitable and unjust to import into the agreement an implied condition contrary to the meaning and intent of the parties, and thus enable the defendants, after obtaining the control of the corporation and its management, to apply for and secure the appointment of a receiver on the allegation of insolvency, and to use this as a ground for refusing to comply with an agreement which, in effect, called upon them, as a consideration for the delivery of the stock, to pay $10,000 in monthly installments covering a period of two years. That the payment of such sum was what the plaintiff desired to secure, and the defendants agreed to pay, as the consideration for the stock, is evident from the character of the employment which the plaintiff was to obtain. The agreement did not specify that he was to render any particular services, but provided that he was to be appointed the vice president or consulting engineer, which necessarily excludes the idea that he was to have his whole time continuously employed with the details of the company during the period, as a condition precedent to his right to receive the stipulated sum.

Having reached the conclusion that the court below erred in its construction of the contract, it follows that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(37 App. Div. 531.)

SCHLESINGER v. COLUMBIAN FIRE INS. CO.

(Supreme Court, Appellate Division, First Department. February 10, 1899.)

1. INSURANCE—AGENCY—EVIDENCE—SUFFICIENCY.
   P. occupied an office leased by an insurance company, with others, on which a sign was displayed, and was supplied with stationery which bore his name as the company's agent. A broker presented applications for insurance, some of which P. accepted, and issued "binders" signed by him as agent, among which was plaintiff's. The company accepted premiums and issued policies in lieu of some of the binders, but plaintiff's had not been received when a fire occurred. *Held* sufficient to justify a finding that P. had authority to issue such binders.

2. SAME—ESTOPPEL.
   Where an insurance company knows that a person is acting as its adjuster in fixing a loss, and fails to repudiate his acts until after the amount has been fixed and determined, it cannot afterwards question his authority.

Appeal from trial term, New York county.

Action by Edward Schlesinger against the Columbian Fire Insurance Company. There was a judgment for plaintiff, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

John Winthrop Fiske, for appellant.

Benno Loewy, for respondent.

McLAUGHLIN, J. I. Tanenbaum, Son & Co., insurance brokers, on behalf of the plaintiff and many others, on the 4th of January, 1893, applied to one Ward Philips, as agent of the defendant, for fire insurance. Out of the applications presented, Philips accepted over 40, including the plaintiff's, and issued a "binder" for each, signed by him as such agent. On the 9th of the same month, Philips, upon stationery bearing his name as agent of the defendant, wrote to I. Tanenbaum, Son & Co., asking that the defendant be released from 13 of the risks for which he had on the 4th issued binders, and which included the one issued to the plaintiff. He concluded his letter by saying: "The immediate return of the binders will be deemed a personal favor; otherwise, you will consider this the usual five-days notice, as per New York standard form of policy." On January 10th, the binder issued to the plaintiff not having been then returned, a fire occurred, and the property insured was destroyed. Notice of the fire was given, proofs of loss served, and thereafter one White was engaged by Philips to adjust the plaintiff's loss; and he, to the knowledge of the defendant's general agent, acted as adjuster. An agreement was subsequently reached as to the loss sustained by the plaintiff, which was reduced to writing, signed by White on behalf of the defendant, by adjusters of other insurance companies, and by the plaintiff, which fixed the total loss at $26,947.80, and the proportionate amount to be paid by the defendant at $2,616.30. The defendant refused to pay its proportionate amount of the loss, upon the ground that Philips, in issuing the binder, had no authority to do so, and that his act was not binding upon the defendant. This action was then brought. At the close of the trial the question was submitted to the jury to determine whether Philips, on the day the binder was issued, had authority from the defendant to issue the same, coupled with instructions that, if he did not, then the verdict must be for the defendant. The plaintiff had a verdict, and from the judgment entered thereon this appeal is taken.

The appeal being solely from the judgment, only exceptions taken upon the trial are brought up for review. Wright v. Vulcanizing Co., 76 Hun, 340, 27 N. Y. Supp. 1108. The principal exceptions relied upon were those taken to the refusal to dismiss the complaint at the close of plaintiff's case, and to direct a verdict at the close of the whole case. The appellant's counsel urges that the court erred in not granting one or the other of these motions, for the reason that sufficient evidence was not introduced to justify a finding that Philips on the 4th of January was authorized to issue the binder in question. A reference to some of the evidence bearing upon the subject will show that the learned counsel misapprehends its force, and that there was sufficient evidence to go to the jury on the questions involved. At the time the binder was issued, Philips was occupying an office leased by the defendant, with others, and upon which its sign was displayed. The defendant had supplied him, prior to the fire, with stationery upon which appeared his name as

its agent.  Not only this, but the defendant recognized Philips' act in issuing some of the binders signed by him on the 4th as binding upon it, by thereafter receiving premiums, and issuing policies to take their place.  In some of these policies the insurance was stated to commence prior to January 4th, and the premiums were deposited by Philips in a bank to his credit as agent of the defendant.  These facts, taken in connection with the act of the defendant with reference to the appraisal of the damages, and the participation of White as its representative therein without objection, were clearly sufficient to justify a finding that Philips had authority to bind the defendant by the issuance of the binder in question.  His issuance to I. Tanenbaum, Son & Co., of the different binders on the 4th of January, and his rejection of the other applications, was one act; and the recognition by the defendant that Philips had authority in any of the cases was in itself sufficient to justify the conclusion that he had authority in the others.  And that the defendant did recognize he had such authority is evidenced by the fact that it accepted the premiums, and thereafter issued policies to take the place of some of the binders.

We are also of the opinion that there was sufficient evidence to justify the jury in finding that White was authorized to act as adjuster of the defendant, and that he had authority to make the agreement as to the appraisal which he did on its behalf.  The general agent of the defendant knew that White was engaged by Philips, and was acting as its adjuster, and that, in case of a disagreement as to the amount of loss sustained by the plaintiff, an appraisal would be had.  He acquiesced in what White was doing, and did not repudiate his acts until after the defendant's proportionate share of the loss had been fixed and determined.  After the defendant had thus permitted White to act with others interested in fixing the loss, good faith, honesty, and fair dealing require that it should not thereafter be heard to say that White had no authority to do what he did.

The other exceptions raised by the defendant have been considered, but are equally without merit.

It follows that the judgment appealed from must be affirmed, with costs to the respondent.  All concur.