(May 6, 1908.)

GEORGE L. ALLEN and LEWIS G. SANDERS, Under the Firm Name of SANDERS & ALLEN, Respondents, v. PHOENIX ASSURANCE COMPANY, a Corporation, Appellant.

[95 Pac. 829.]

FIRE INSURANCE—APPLICATION FOR INSURANCE—KNOWLEDGE OF AGENT—WAIVER OF CONDITIONS IN POLICY—CONDITION LIMITING AUTHORITY OF AGENT.

1. Where an insurance company accepts an application for insurance, and acts upon it, and writes a policy based upon the information contained therein, it is bound by such application and information, and cannot avoid the effect of the same upon the ground that it is a rule of the company not to receive or accept applications.

2. Where an insurance company receives an application for insurance, and writes and delivers a policy by reason thereof, and does not advise the insured that it does not receive applications, or that the application was defective or insufficient, the company will not be permitted to repudiate or disregard the application or the effect thereof.

3. The issuance of a policy of insurance upon a written application is a waiver of all matters of form or completeness of answer to all questions contained in said application.

4. An insured, receiving a policy of insurance in response to a written application therefor, in which questions are asked and answers given, has a right to presume that the policy is in accord with the application, and that the answers and disclosures made in the application are sufficient to authorize the company to issue the policy, and the applicant is not required to return the policy because of conditions in it which might seem in conflict with the application.

5. An agent of an insurance company who solicits insurance, takes the application, receives the premium and delivers the policy, for these purposes at least, is the agent of the company with full power to act with reference thereto; and if he writes down false state-

ments after he has been truthfully informed, and after personal inspection of the premises, the information and knowledge of such agent will be imputed to the company.

6. Where an agent has authority to receive an application for insurance, and has filled in the same and forwarded it to the company, which has accepted the same and issued a policy thereon and received the premium therefor, the company will be estopped from denying the sufficiency of the answers to questions in the application.

7. An insurance company which accepts an application from one acting as soliciting agent, and receives the premium for the policy through said agent, and writes a policy by reason of such application and the payment of such premium, thereby makes such person its agent for the purpose of receiving applications for insurance, and is bound by the acts of such agent; and his knowledge, while acting within the scope of his said authority, is the knowledge of the company.

8. A provision in a policy that ''In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company'' is waived by the company accepting an application from one who is not authorized in writing as the agent, and writing and delivering a policy upon said application and receiving and retaining the premium therefor.

9. Where a policy of insurance is delivered and accepted by the insured, it thereby becomes a contract between the parties, but its terms and conditions may be waived and modified by the application, and the acts of the parties with reference thereto.

10. Where. an application for insurance contains certain answers to questions propounded and the omission to answer other questions, and the policy is written, based upon that application, which is the only information the insurer has, such application becomes a part of the contract of insurance, and the insurer is bound by the provisions and conditions of such application to the same extent and with like effect as the insured by the terms and conditions of the policy.

11. Whatever knowledge an adjuster obtains within the scope of his authority as adjuster, with reference to a breach of conditions precedent, will be imputed to the company, and the recognition by the company of the validity of the contract of insurance, after such knowledge is obtained, and a retention of the premium without offer to return it, amounts to a waiver of such breach of conditions.

12. A provision in a policy of insurance to the effect that a waiver, to be effectual, must be indorsed in writing by an agent who has the authority to do so, is for the benefit of the insurer,

and, like other conditions, may be waived or changed by the company.

13. Oral testimony may be introduced to prove a waiver of a condition in an insurance policy.

(Syllabus by the court.)

APPEAL from the District Court of Second Judicial District for Nez Perce County. Hon. Edgar C. Steele, Judge.

Action on a fire insurance policy. Judgment for plaintiffs. *Affirmed.*

James E. Babb, for Appellant.

Notice to a mere soliciting agent without authority to sign and deliver the contract is not notice to the company, especially where not communicated, and such an agent cannot bind the company contrary to express provisions in the policy. (*Wilson v. Conway F. Ins. Co.*, 4 R. I. 141; *Tebbetts v. Hamilton Mut. Ins. Co.*, 3 Allen, 569; *Knudson v. Grand Council of New Legion of Honor*, 7 S. D. 214, 63 N. W. 911; *Home Friendly Society v. Berry*, 94 Ga. 606, 21 S. E. 583; *Vose v. Eagle Life & H. Ins. Co.*, 6 Cush. 42; *Liverpool & G. Ins. Co. v. Van Os*, 63 Miss. 431, 56 Am. Rep. 810; *Shimp v. Cedar Rapids Ins. Co.*, 26 Ill. App. 254; *Galbraith's Admr. v. Arlington M. L. Ins. Co.*, 12 Bush (Ky.), 29; *Kings Co. Ins. Co. v. Swigert*, 11 Ill. App. 590; *Phoenix Ins. Co. v. Spiers*, 87 Ky. 285, 8 S. W. 453; *McGrath v. Home Ins. Co.*, 84 N. Y. Supp. 374, 88 App. Div. 153; *Northern Assur. Co. v. Grandview Bldg. Assn.*, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. ed. 213; *Deming Investment Co. v. Shawnee Fire Ins. Co.*, 16 Okl. 1, 83 Pac. 918, 4 L. R. A., N. S., 607; *Pennsylvania Casualty Co. v. Bacon*, 133 Fed. 907, 67 C. C. A. 497; *Atlas Reduction Co. v. New Zealand Ins. Co.*, 138 Fed. 497, 71 C. C. A. 21; *Billings v. National Ins. Co.*, 6 Ohio C. C., N. S., 567; *Gillum & Co. v. Fire Assn.*, 106 Mo. App. 673, 80 S. W. 283; *German Ins. Co. v. Allen*, 69 Kan. 729, 77 Pac. 529; *Meigs v. London Assur. Co.*, 126 Fed. 781; *Martin v. Ins. Co. of North America*, 57 N. J. L. 623, 31 Atl. 213; *Fries-Breslin Co. v. Starr Fire Ins. Co.*, 154 Fed. 35; *Clemments v. Ger-*

man Ins. Co., 153 Fed. 237; Deming Inv. Co. v. Shawnee Fire Ins. Co., 16 Okl. 1, 83 Pac. 918, 4 L. R. A., N. S., 607; Gish v. Ins. Co., 16 Okl. 59, 87 Pac. 869; Conn. Fire Ins. Co. v. Buchannan, 141 Fed. 877; Lefler v. New York Life Ins. Co., 143 Fed. 814; Kentucky Vermillion M. & C. Co. v. Norwich Union Fire Ins. Co., 146 Fed. 695; Bowditch v. Norwich Union Fire Ins. Co., 193 Mass. 565, 79 N. E. 788; Greenwich Ins. Co. v. Dougherty, 64 N. J. L. 716, 42 Atl. 485, 46 Atl. 1099; Kelsey v. Con. Casualty Co., 131 Iowa, 207, 108 N. W. 221, 8 L. R. A., N. S., 1014; Ferguson v. Lumberman's Ins. Co. (Wash.), 88 Pac. 128; Murphy v. Russell & Co., 8 Ida. 143, 67 Pac. 421; Iverson v. Metropolitan Life Ins. Co., 151 Cal. 746, 91 Pac. 609.)

In case of conflict between an application for insurance and the policy, the latter controls. (Harr v. Highland Nobles (Neb.), 110 N. W. 713; Goodwin v. Provident Sav. L. Assur. Soc., 97 Iowa, 226, 59 Am. St. Rep. 411, 66 N. W. 157, 32 L. R. A. 473; Ogletree v. Hutchinson, 126 Ga. 454, 55 S. E. 179; Costello v. Grant County Mut. F. & Ltg. Ins. Co. (Wis.), 113 N. W. 639, and cases cited; La Campania Bilbaina De-Navegacion v. Spanish-Am. L. & P. Co., 146 U. S. 483, 13 Sup. Ct. 142, 147, 36 L. ed. 1054; Myers v. Ins. Co., 27 Pa. St. 268, 67 Am. Dec. 462; Lawson on Presumptive Ev., Rule 70, p. 303; Accident Ins. Co. v. Crandal, 120 U. S. 527, 7 Sup. Ct. 685, 30 L. ed. 740—last half next to last paragraph. Same case, 27 Fed. 45—latter part next last paragraph.)

In every realm of the doctrine of contracts, what has been spoken in the making of the contract must be regarded and have life and efficacy; the doctrines of implication, construction, waiver and estoppel have no office or function in opposition to express statements and declarations inconsistent therewith. (Tiedeman on Sales of Personal Prop., sec. 182; Washburn on Real Property, 6th ed., sec. 2406; 29 Am. & Eng. Ency. of Law, 2d ed., 1095.)

An intent to waive cannot be inferred from the mere fact of knowledge, in the face of an express stipulation of the contract made and delivered subsequent to such knowledge.

(*United Firemen's Ins. Co. v. Thomas,* 82 Fed. 406, 27 C. C.
A. 42, 47 L. R. A. 450.)

Daniel Needham, for Respondents.

Knowledge by the agent issuing the policy or renewing it
and receiving the premium of facts constituting a breach of
any of its conditions, is a waiver by him and by the company
of the condition so known to be broken.    (*New England Fire
& M. Ins. Co. v. Schettler,* 38 Ill. 166; *Peoria Marine and
Fire Ins. Co. v. Hall,* 12 Mich. 214; *Campbell v. Merchants'
& Farmers' M. Fire Ins. Co.,* 37 N. H. 35, 72 Am. Dec. 324;
*Marshall v. Columbia Mut. Fire Ins. Co.,* 27 N. H. 157; *Master
v. Madison Co. Ins. Co.,* 11 Barb. 624; *Exchange Bank v.
Thuringia Ins. Co.,* 109 Mo. App. 654, 83 S. W. 534; *Ehrlich
v. Ins. Co.,* 88 Mo. 249; *O'Key v. State Ins. Co.,* 29 Mo. App.
105; *Stiepel v. German-American Ins. Co.,* 55 Mo. App. 224;
*McBride v. Republic Fire Ins. Co.,* 30 Wis. 562; *Bellevue
Roller Mill Co. v. London & L. F. Ins. Co.,* 4 Ida. 307, 39
Pac. 196; *Campbell v. American Fire Ins. Co.,* 73 Wis. 100,
40 N. W. 661; *Farnum v. Phoenix Ins. Co.,* 83 Cal. 246, 17
Am. St. Rep. 233, 23 Pac. 869; *Long Island Ins. Co. v. Great
Western Mfg. Co.,* 2 Kan. App. 377, 42 Pac. 739; *Breedlove
v. Norwich Union Fire Ins. Co.,* 124 Cal. 164, 56 Pac. 770;
*Allen v. Phoenix Assur. Co.,* 12 Ida. 653, 88 Pac. 245, 8 L.
R. A., N. S., 903, and cases and authorities therein cited.)

Facts material to the risk made known to the agent, or sub-
agent intrusted with the business before the policy is issued
were constructively known to the company, and cannot be said
to defeat a recovery on the policy.    (*People's Ins. Co. v.
Spencer,* 53 Pa. St. 353, 91 Am. Dec. 217; *Liddle v. Market
Fire Ins. Co.,* 4 Bosw. (N. Y.) 189; *Beal v. Park Fire Ins. Co.,*
16 Wis. 257, 82 Am. Dec. 719; *Kelly v. Troy Fire Ins. Co.,*
3 Wis. 254; *Hough v. City Fire Ins. Co.,* 29 Conn. 10, 76
Am. Dec. 581; *Keenan v. Missouri Mut. Ins. Co.,* 12 Iowa,
126; *Coombs v. Hannibal Sav. & Ins. Co.,* 43 Mo. 148, 97 Am.
Dec. 383; *May v. Buckeye Mut. Ins. Co.,* 25 Wis. 291, 3 Am.
Rep. 76.)

By accepting the benefits of the action of an assumed agent, the company becomes bound by his acts as fully as though he had authority, and by accepting the premium and issuing the policy upon the application purported to be taken by a person acting as its agent, the company estops itself from denying such agency.   (22 Cyc. 1424; *Continental Ins. Co. v. Ruckman*, 127 Ill. 364, 11 Am. St. Rep. 121, 20 N. E. 77; *Aetna Ins. Co. v. Maguire*, 51 Ill. 342; *Larson v. Thuringia Am. Ins. Co.*, 108 Ill. App. 420; *Kansas Farmers' Fire Ins. Co. v. Saindon*, 52 Kan. 486, 39 Am. St. Rep. 356, 35 Pac. 15; *Gibson v. German Mut. Ins. Co.*, 85 Mo. App. 41; *Thomas' v. Hartford Fire Ins. Co.*, 20 Mo. App. 150; *Shell v. German Ins. Co.*, 60 Mo. App. 644; *Queen Ins. Co. v. Union Bank & Trust Co.*, 111 Fed. 697, 49 C. C. A. 555; *Glens Falls Ins. Co. v. Michael* (Ind.), 74 N. E. 964; *McMaster v. New York Life Ins. Co.*, 183 U. S. 25, 22 Sup. Ct. 10, 46 L. ed. 64; *Thompson v. Phoenix Ins. Co.*, 136 U. S. 287, 10 Sup. Ct. 1019, 34 L. ed. 408; *Nat. Bank v. Ins. Co.*, 95 U S. 673, 24 L. ed. 563; *McElroy v. British-Am. Assur. Co.*, 94 Fed. 999, 36 C. C. A. 615; *Abraham v. North German Ins. Co.*, 40 Fed. 717.)

If the assured answered the questions truly, in the absence of fraud or collusion, he is not responsible for any errors or mistakes of the agent in writing down his answers, and the company is estopped from denying the truth of the answers. (*Union Mut. Ins. Co. of Maine v. Wilkinson*, 13 Wall. 222, 20 L. ed. 617; Bliss on Life Ins., secs. 280, 281; *Plumb v. Cattaraugus County Mut. Ins. Co.*, 18 N. Y. 392, 72 Am. Dec. 526; *Rowley v. Empire Ins. Co.*, 36 N. Y. 550; *Boos v. World Mut. Life Ins. Co.*, 64 N. Y. 236; *Baker v. Home Life Ins. Co.*, 64 N. Y. 648; *Columbia Ins. Co. v. Cooper*, 50 Pa. St. 331; *Merserau v. Phoenix Mut. Life Ins. Co.*, 66 N. Y. 274; *Allesina v. London & L. & G. Ins. Co.*, 45 Or. 441, 78 Pac. 392.)

STEWART, J.—This case was before this court, upon appeal from an order sustaining a nonsuit, and is reported in 12 Ida. 653, 88 Pac. 245, 8 L. R. A., N. S., 903.  Upon reversal, the cause was tried to a jury and a verdict returned for the

plaintiffs. The defendant moved for a new trial, which was denied, and this appeal is from the order denying the new trial, and from the judgment. Many of the questions presented by the record were fully discussed and decided in the former opinion, which is the law of this case, and it can serve no purpose to discuss such questions again.

The record shows that the respondents made application to one C. D. Thomas for insurance upon the property involved. Thomas was agent of the Svea Insurance Company, but was not agent for the appellant company. Thomas testifies that he took the respondents' application on a Svea insurance blank, signed by the respondents, and the answers to the questions contained therein were filled in by him upon information received from the insured. After the respondents had signed the application, he returned to his office about sixty miles distant, filled in the answers to the questions, and forwarded the application to John Moore, a regularly appointed agent of the appellant. Moore and Thomas had an arrangement, by which upon any risk sent Moore by Thomas the commissions would be divided equally. Upon receipt of the application, Moore wrote the policy involved in this case and transmitted the same to respondents. Moore had no knowledge or information whatever with reference to the risk, except such as he received from the application and the letter of Thomas transmitting the same. The application and the letter of Thomas were the cause which led to said policy being written.

Omitting such parts of the application as are not material, it is as follows:

"Insurance is wanted on the following described property by Sanders & Allen for the term of twelve months, from the 27th day of August, 1901, to the 27th day of August, 1902; $250 frame building, two-story, shingle roof, occupied as flour-mill; $500 on 35-horsepower Cooper engine and 50-horsepower Cooper boiler contained in said building; $1250 on machinery contained in said building, situated at Melrose, Idaho. Mail policy to C. D. Thomas at Nez Perce P. O. Question 17: What is your title to ground? Answer. Do-

nated to mill. Question 18: Is property mortgaged? How much? Signed, Sanders & Allen, assured."

Questions propounded to the agent were then answered and the answers signed by C. D. Thomas, agent. Mr. Moore testified as follows: "I received a letter from Thomas about as follows: 'Inclosed find application of Sanders & Allen for insurance on a flour-mill, which I consider a very good risk, and it is situated upon homestead or donation property.' I think he informed me that, and I think I informed the company, instead of a deed it was a homestead, but I am not positive. This is as near as I can recollect about it, and as to any encumbrance upon the property, I have no recollection. There was nothing in the letter that the homestead had been proved up on, only that it was a homestead. I didn't communicate any information to the company that was not received from Thomas, and I think if the company will look over their files, they will find a letter from me. I write my policy according to my own ideas. I am not governed by the application."

Mr. Thomas testified: "I looked over the mill thoroughly and I could not say that Allen had told me there was any encumbrance on it. He may have told me. He may not. I could not say. I don't remember."

Mr. Allen testified as follows: "I told him [meaning Thomas] there was a mortgage on the property of $300. We talked along quite a little in regard to it when he was taking the application, and he took it down, asking questions I don't know what all. He asked me all there was on the application, and I answered them just exactly how it was in regard to the homestead, and in regard to the mortgage and everything, just as near as I knew how."

There was, in fact, a chattel mortgage covering a part of the property insured, given to one J. P. Vollmer, to secure the payment of a note of $300, executed January 23, 1901. The policy of insurance was assigned to Mr. Vollmer as collateral security for the note of $300.

Mr. Moore testified that: "The application you showed me is not a form of application of the Phoenix Assurance Co.

In a general way the Phoenix Company did not have any. I never used any. If he had sent me a general statement of the condition of matters connected with it it would have been just the same. I had no application forms for the Phoenix Assurance Co.''

This policy of insurance was written and delivered on August 27, 1901. The property was destroyed by fire on April 23, 1902. After the fire, one McKowen, an adjuster acting for the appellant company, came to adjust the loss, and after looking over the loss the witness Allen testifies with reference to a conversation with said McKowen, as follows:

''He says it is a total loss with the exception of the engine and boiler. He asked me for the policy and I told him I did not have the policy, that it was down at Vollmer's. We owed him a note of $300 and it had come due and we went down to get an extension of time on the note for a month or six weeks, and we told him that we had no place to keep the policy, and to show him that we meant business we left the policy with him as collateral. We met McKowen down there the next day and he barely passed the time of day; didn't seem to care whether he done that or not, and he says, 'I am just over to the bank now to see that policy.' And he went over to the bank and pretty soon came back and says, 'I've looked the policy over and found you have assigned it.' He says, 'I've got no more business to do with you,' or words to that effect. We saw Mr. McKowen a time or two next day, or the same day, and didn't have much talk with him in regard to the matter, and the next morning when we went to go away he shook hands with us, bid us good-by and hoped we would get our money all right and says, 'As you have put it in the hands of an attorney you will have to look to the company from this on.' He says lawing is all right but a little money is sometimes better, and that is the last talk I remember of having with Mr. McKowen.''

W. L. Thompson, cashier of the First National Bank of Lewiston, testified, among other things, as follows:

''I remember a Mr. J. H. McKowen, an insurance adjuster for the defendant company, calling on me at Lewiston after

the fire.   At the time he called I stated to him that we had
made a mistake in taking an assignment of the policy, not
having sent the same to the Moscow agent for approval.   That
our mistake was not discovered until after the fire had been
reported.   I also stated to him that we held this policy as
collateral for a loan and realized that we had no claim under
the policy as assigned.   I asked him if he would protect us,
or try to protect us, to the amount of our interests when he
adjusted the loss.   This he promised to do.   After this he
called on me and made a statement to the effect that he would
be willing to adjust the loss on a basis of about the amount
of our loan and suggested that I use my influence with Sanders
& Allen to accept the same."

As premium on this insurance the respondents paid to C. D.
Thomas for appellants $110, the insurance for one year from
August 27, 1901, to August 27, 1902.   No part of this pre-
mium was ever returned to the respondents.

The plaintiffs placed the adjustment of their loss in the
hands of Daniel Needham, an attorney.   He wrote to the head
office, and afterwards corresponded with Butler and Hewitt,
the company's general agents at San Francisco, and also with
J. H. McKowen, the adjuster at Spokane.   This correspond-
ence took place after the fire and after the adjuster had
learned that the plaintiffs were not the unconditional owners
of the real property, and that a chattel mortgage existed
against the personal property covered by said policy.   Butler
and Hewitt wrote Mr. Needham on June 10th, "We have
written to McKowen on the subject mentioned by you and
upon getting his reply will be in a better position to write
you again."   And on July 1st the same parties wrote Mr.
Needham as follows: "We beg to say that the adjustment con-
tinues in the hands of Mr. J. H. McKowen of Spokane, and we
think it would be better for you to address him on the sub-
ject, as we have no additional data from him as to the stand-
ing of the loss claimed at this time."   On July 16th Mc-
Kowen wrote Mr. Needham, among other things, as follows:
"But my practice always has been to try to do the right thing,
and if it can be shown that it would be absolutely right to

present some reasonable proposition to the company for disposing of this unpleasant matter, I will be glad to hear from you.''

The policy of insurance, among other things, contains the following conditions:

''This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the interest of the insured be other than unconditionally a sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple, or if the subject of insurance be personal property and be or become encumbered by a chattel mortgage.'' Also, ''In any matter relating to this insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company.'' And, ''No officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as, by the terms of this policy, may be the subject of agreement indorsed hereon or added hereto; and, as to such provisions and conditions, no officer, agent or representative shall have such power, or be deemed or held to have waived such provision or condition unless such waiver if any shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached. . . . . Valid only when countersigned by the duly authorized agent of said company at Moscow, Idaho. Countersigned at Moscow, this 27th day of August, 1901. John Moore, agent, I. D. Irving, manager.''

The appellant assigns eighteen errors, many of which were decided upon the former appeal of this case. Counsel for appellant, however, upon this appeal contends very earnestly and forcibly that, by accepting the policy of insurance with the provisions therein, as to title and encumbrances, the respondents warranted such conditions to be true; and, inasmuch as the respondents were not the owners in fee and unconditionally of the real property, and because there was an encumbrance upon the property insured, there was a breach of the conditions precedent which rendered the policy void. In

answer to this, the respondents contend that there was a waiver of these conditions by the acceptance of the application and the writing of the policy with full information that the plaintiffs were not the unconditional owners in fee of said property, and with knowledge that the same was encumbered, and by the acts of the company in negotiating a settlement and adjustment of said loss.

In answer to the question of waiver, appellant contends that there can be no waiver of any of the conditions contained in said policy, except such as by the terms of the policy may be the subject of agreement indorsed or added thereto; and, as to such provisions and conditions, such officer or agent shall not have such power, unless such waiver shall be written upon or attached to the policy.

It may be conceded that it was the general rule of the appellant company not to require or accept applications for insurance, and that it wrote and delivered its policies upon the inspection and judgment of its agent, without requiring any written application therefor. In this case, however, it appears that the respondents applied to Thomas, a person engaged in the insurance business, for a policy upon the property involved; that Thomas was unable to write such policy, but took from the respondents an application therefor. This application was forwarded to Mr. Moore, a legal agent of the appellant in the state of Idaho. Mr. Moore was not acquainted with respondents or the property sought to be insured, but, in response to the application, he writes a policy and transmits the same to the respondents. This policy, in most particulars, follows the statements found in the application. It was the only information which Mr. Moore possessed upon which he was able to write the policy in question.

The application states the specific amount of insurance desired on the building and its description, the amount of insurance desired on the engine and its description, and the amount of insurance desired on the machinery. The policy followed this description particularly; also, the location of the property. This application was retained by the company, the policy written and delivered by reason of it, and the insured

never advised that the company did not receive applications, or that the application was defective or insufficient. If it were the rule of the company, in all cases, to not require or accept applications, it would have been only fair and just that the company, after having received the application, return the same to the applicants and inform them of that fact. This the company or its agent did not do.

The contention that the company never accepts written applications does not impress this court with much force, in view of the acts of the company in this case and the following provision in the policy: "If an application, survey, plan, or description of property be referred to in this policy, it shall be a part of this contract and a warranty by the insured." If an application is never taken, why this provision? If the application is taken, then it becomes a warranty. If a warranty, then it becomes a part of the contract. If a part of the contract, then the conditions in the policy must be construed with the conditions in the application, and effect given to both, if possible.

In this case, the company writes the policy with an application before it, which states that the insured does not own, in fee simple, the title to the ground upon which the building is situated, and also that the insured makes no statement or warranty whatever as to encumbrances.

Taking the application, then, in connection with the policy, we find these two questions in the application, to wit: "What is your title to ground?" which was answered as follows: "Donated to mill." Question: "Is the property mortgaged? How much?" to which no answer was made. The application was received and acted upon in this condition. If these answers were insufficient to fully advise the company so that it could write an insurance policy or accept the risk, it was the duty of the company to require such questions to be fully and satisfactorily answered before the policy was written or delivered. (*Dunbar v. Phoenix Ins. Co.*, 72 Wis. 492, 40 N. W. 386.)

The issue of a policy upon an application is a waiver of all matters of sufficiency of form or disclosures, called for by the questions. (19 Cyc. 790, and the authorities there cited.)

The respondents, when they received the policy from the appellants on a written application containing certain questions, had a right to presume that the policy was in accord with the application, and that the answers and disclosures made in the application were sufficient to bring them the insurance desired, and they were not required to return the policy because of conditions in it which might seem to be in conflict with the application. (*McElroy v. British-American Assur. Co.*, 94 Fed. 990, 36 C. C. A. 615.)

After writing the policy, based upon an application containing inquiries to which answer has been made by the applicant, the company will not be permitted to claim that the conditions in the policy conflict with the answers in the application, and thereby work a breach of the conditions of said policy. An insurance company, with knowledge of the then existing breach of a condition precedent, cannot accept the premium and issue a policy pretending to insure, but which would be avoided after a loss, by reliance upon such a breach of condition: as to do so would be to perpetrate a fraud upon the insured. (19 Cyc. 790; *Davis v. Phoenix Ins. Co.*, 111 Cal. 409, 43 Pac. 1115.)

Mr. Moore, the legally appointed agent of the appellant company, was informed by this application that the respondents were not the owners in fee of said property; and, as to encumbrances, that they made no representation with reference thereto; and the record fully discloses that Mr. Thomas, who received said application, was fully advised by the respondents both as to title and encumbrances. The authorities, as we understand them, fully sustain the proposition that the company will be estopped from asserting the invalidity of its policy, because of violations of conditions precedent, if such alleged violations were known by the company at the time of its issue. (*McElroy v. British-American Assur. Co.*, 94 Fed. 990, 36 C. C. A. 615; *Mesterman v. Home Mut. Ins. Co.*, 5 Wash. 524, 34 Am. St. Rep. 877, 32 Pac. 458; Wood on Insurance, sec. 406; *Beebe v. Ohio Farmers' Ins. Co.*, 93 Mich. 514, 32 Am. St. Rep. 519, 53 N. W. 818, 18 L. R. A. 481; *Wood v. American Fire Ins. Co.*, 149 N. Y. 382, 52 Am. St.

Rep. 733, 44 N. E. 80; *Robbins v. Springfield Fire etc. Ins. Co.*, 149 N. Y. 477, 44 N. E. 159; Cooley, Briefs on Insurance, vol. 3, p. 2524.)

Appellant, however, contends that any knowledge obtained or possessed by Thomas cannot be imputed to the appellant, for the reason that Thomas was not its agent in effecting the insurance. We understand the rule of law, however, to be that the acceptance and approval by the company of the acts of another in behalf of the company, constitute a recognized agency. In this case, Thomas took the application; he wrote the answers to the questions in relation to the risk upon the information obtained from respondents; he transmitted the application to the agent of the appellant; he received the premium and paid it over to the company; he received one-half of the commissions, and the company ratified his acts by accepting said application and the information contained therein.

"Where one, without objection, suffers another to do acts which proceed upon the ground of authority from him, or by his conduct adopts and sanctions such acts after they are done, he will be bound, although no previous authority exist, in all respects, as if the requisite power had been given in the most formal manner. If he has justified the belief of a third party that the person assuming to be his agent was authorized to do what was done, it is no answer for him to say that no authority had been given, or that it did not reach so far, and that the third party had acted under a mistaken conclusion. He is estopped to take refuge in such a defense." (*Bronson's Exr. v. Chappel*, 12 Wall. 681, 20 L. ed. 436; *Lamberton v. Connecticut Fire Ins. Co.*, 39 Minn. 129, 39 N. W. 76, 1 L. R. A. 222; *Abraham v. North German Ins. Co.*, 40 Fed. 717; *McElroy v. British-American Assur. Co.*, 94 Fed. 990.)

"An agent who solicits the insurance, takes the application, receives the premium, and delivers the policy, may, in our opinion, by his conduct or acts, bind his company by way of waiver of a forfeiture on account of additional insurance, in the absence of knowledge upon the part of the assured that

his powers in this respect had been restricted. This being so, it follows that the knowledge of the agent, under such circumstances, is to be imputed to the company." (*McElroy v. British-American Assur. Co.,* 94 Fed. 990, 36 C. C. A. 615; *Insurance Co. v. Spiers,* 87 Ky. 285, 8 S. W. 453.)

The case of *Continental Ins. Co. v. Pearce,* 39 Kan. 396, 7 Am. St. Rep. 557, 18 Pac. 291, involved the identical question contended for here, and the court says:

"The company did make him [Beals] its solicitor, and it must be presumed that he was given full power to take applications and give such information to the company as he might obtain either from the applicant or from other sources. For this purpose, at least, he was the agent of the company with full power; and if he wrote down false statements after he had been truthfully informed by the applicant and after a personal inspection of the premises, the assured should not suffer for his misrepresentations. . . . . We are of the opinion that after the defendant had received the premium of the plaintiff, and issued him a policy, that it was estopped from denying the truth of the statement filled in by its own agent in the application of plaintiff. The knowledge that Beals possessed was, for the purposes of this action, the knowledge of the company. He was acting as its agent, and it was his especial duty to ascertain the actual facts about the risk, as the company made him its agent for that purpose. . . . .

"The current of the later authorities seems to be that the agent who takes the application and obtains the policy must be regarded for those purposes as having full power to act for and bind the company, and after having received money from the insured, it cannot be heard to say that the statements in the application were false when there was no fraud or attempt to deceive and misrepresent on the part of the assured."

So we think, in this case, by accepting the application from Thomas, and receiving the premium for the policy from the respondents through Thomas, the company thereby made Thomas its agent for the purpose of receiving applications for insurance, and is bound by his acts, and that his knowledge of

the risk must be imputed to the company. The acts of Thomas clearly establish the fact that he was the agent of the company in accepting the application of the respondents for insurance, and that his knowledge of the condition of the risk is the knowledge of the company. (*Fidelity & Casualty Co. v. Egbert*, 84 Fed. 644, 55 U. S. App. 200, 28 C. C. A. 281; *Insurance Co. v. Wilkinson*, 13 Wall. 222, 20 L. ed. 617; *Pitney v. Glen's Falls Ins. Co.*, 65 N. Y. 6; *Giddings v. Phoenix Ins. Co.*, 90 Mo. 272, 2 S. W. 139; *Germania Ins. Co. v. Wingfield*, 22 Ky. Law Rep. 455, 57 S. W. 456; *Manchester Assur. Co. v. E. V. Dowell Co.*, 25 Ky. Law Rep. 2240, 80 S. W. 207; *Continental Ins. Co. v. Ruckman*, 127 Ill. 364, 11 Am. St. Rep. 121, 20 N. E. 77; 22 Cyc. 1427; *Gibson v. German-American Town Mut. Ins. Co.*, 85 Mo. App. 41; *Beal v. Park Fire Ins. Co.*, 16 Wis. 257, 82 Am. Dec. 719; *Gish v. Insurance Co. N. A.*, 16 Okl. 59, 87 Pac. 869.)

Counsel for appellant, however, argues that to recognize Thomas as the agent of the appellant would do violence to the conditions of the policy. The argument of counsel, however, overlooks the fact that the company intended and did, in fact, waive these conditions by accepting an application from one who was not authorized in writing as the agent, and writing and delivering a policy upon said application, and receiving and retaining the premium therefor. Such acts constitute a waiver of these provisions and estop the company from contending that such conditions have been violated. (*Wood v. American Fire Ins. Co.*, 149 N. Y. 382, 52 Am. St. Rep. 733, 44 N. E. 80; *Robbins v. Springfield Fire etc. Ins. Co.*, 149 N. Y. 477, 44 N. E. 159; *Westchester Fire Ins. Co. v. Earle*, 33 Mich. 144; *Phoenix Ins. Co. v. Spiers*, 87 Ky. 285, 8 S. W. 453; *Phoenix Ins. Co. v. Warttemberg*, 79 Fed. 245, 24 C. C. A. 547; *McElroy v. British-American Assur. Co.*, 94 Fed. 990, 36 C. C. A. 615.) But counsel for appellant contends that if the terms and conditions of the policy were satisfactory to the plaintiffs, and they accepted it, there was a contract between the parties, but only according to the language of the policy; and that if the terms and conditions were not satisfactory to the plaintiffs, and they did not accept it, there was no contract of insurance. If, however, they accepted the

policy, they accepted it entire, and could not accept a part and reject the balance.

This contention may be conceded, but the terms of the contract are not to be determined by the policy alone; but the application may be considered, where an application is taken, as well as oral testimony received. If an application is made and contains certain answers to questions therein propounded, and the omission to answer other questions, and the policy is written, based upon that application, and is the only information the insurer has, it becomes a part of the contract and the insurer is bound by the provisions and conditions of such application to the same extent and with the same effect as is the insured by the terms and conditions of the policy; and in determining what the contract is between the parties, the application will be examined in connection with the policy, and the conditions and the provisions of both construed together.

But there is other and further evidence of a waiver of the conditions in said policy after the fire occurred, in the efforts to adjust said loss, and the correspondence in relation thereto. Up to the time this action was instituted, the appellant herein treated the policy as a legal contract and continued in an effort to compromise and adjust the loss. Not only that, but after the company discovered, as it now claims, that the policy was void from its inception, it at no time offered to return the premium received therefor. Even after this suit was instituted the company did not bring into court or tender to the respondents the premium. We do not believe that an insurance company should be permitted to retain the premium received for a valid contract of insurance, and at the same time repudiate said contract and maintain that the same was not a contract of insurance. If the policy did not insure the respondents, and the appellant was under no obligation to pay the respondents for any loss, then the company received and retained the premium without rendering any consideration therefor. Even though it be conceded that the contract of insurance was invalid by reason of a breach of conditions precedent, yet it was the duty of the company, upon its discovering said breach, in order to maintain its position that

there was no contract, to have returned the premium received therefor. (Clement on Fire Insurance, 428, and the authorities there cited.)

McKowen was the adjuster, and as such had authority to adjust and settle the loss. To adjust an unliquidated claim is to determine what is due: to settle; ascertain. To adjust a loss is to ascertain and determine. (*McCormick Harvesting Machine Co. v. Brower,* 88 Iowa, 607, 55 N. W. 537; *Warder v. Robertson,* 75 Iowa, 585, 39 N. W. 905; *Stevens v. Citizens' Ins. Co.* 69 Iowa, 658, 29 N. W. 769; *Brown v. State Ins. Co.,* 74 Iowa, 428, 7 Am. St. Rep. 495, 38 N. W. 135; *Searle v. Dwelling-house Ins. Co.,* 152 Mass. 263, 25 N. E. 290; *Dwelling-house Ins. Co. v. Dowdall,* 159 Ill. 179, 42 N. E. 606; *Hartford Life etc. Ins. Co. v. Hayden,* 90 Ky. 39, 13 S. W. 585; *Schlesinger v. Columbian Fire Ins. Co.,* 37 App. Div. 531, 56 N. Y. Supp. 37; 1 Am. & Eng. Enc., 2d ed., 641; *Ruthven v. American Fire Ins. Co.,* 102 Iowa, 550, 71 N. W. 574.)

Whatever knowledge McKowen obtained within the scope of his authority in adjusting the loss, as to a breach of conditions precedent, was the knowledge of the company, and the knowledge thus obtained that the plaintiffs were not the unconditional owners in fee of the property, and that such property was encumbered, will be imputed to the company, and a recognition on its part of the validity of the contract of insurance after such knowledge is obtained, and a retention of the premium without offer to return it, amounts to a waiver of such breach of condition.

It is also claimed by counsel for respondents that, under the provisions of the policy, a waiver to be effectual must be indorsed in writing upon the policy by an agent who had the authority to do so, and as the waiver was not so indorsed in this case, none can be shown. This provision was inserted in the policy by the company as one of many conditions required by the company, and, like any other condition, can be waived or changed by the company and the insured. (*McElroy v. British-American Assur. Co.,* 94 Fed. 990, 36 C. C. A. 615.)

As was said in the case of *Lamberton v. Connecticut Fire Ins. Co.,* 39 Minn. 129, 39 N. W. 76, 1 L. R. A. 222:

"A contracting party cannot so tie his own hands, so restrict his own legal capacity for future action, that he has not the power, even with the assent of the other party, to bind or obligate himself by his further action or agreement contrary to the terms of the written contract."

In the case of *Farnham v. Phoenix Ins. Co.*, 83 Cal. 246, 17 Am. St. Rep. 233, 23 Pac. 869, the court says:

"It is also well settled that an insurance company cannot so limit its capacity to contract by general stipulations against waiver of conditions, or that its contracts or waivers must be in writing, that it cannot by its own agents make an oral contract or an oral waiver not forbidden by the statute of frauds." (*Robinson v. Berkey*, 100 Iowa, 136, 62 Am. St. Rep. 549, 69 N. W. 434; *Peterson v. Walter A. Wood etc. Machine Co.*, 97 Iowa, 148, 59 Am. St. Rep. 399, 66 N. W. 96; *Osborne v. Backer*, 81 Iowa, 375, 47 N. W. 70; *Reiner v. Dwelling-house Ins. Co.*, 74 Wis. 89, 42 N. W. 208; *Dick v. Merchants' Ins. Co.*, 92 Wis. 46, 65 N. W. 842; *Westchester Fire Ins. Co. v. Earle*, 33 Mich. 143; *Berry v. American Cent. Ins. Co.*, 132 N. Y. 49, 28 Am. St. Rep. 548, 30 N. E. 254; *Phoenix Ins. Co. v. Bowdre*, 67 Miss. 620, 19 Am. St. Rep. 326, 7 South. 596.)

We think this doctrine is supported not only by the authorities but by reason. If a company can waive the conditions in a written policy as to the warranties, it would seem to follow that it could also waive a condition requiring such waiver to be indorsed upon the policy in writing. This provision, as to requiring a waiver to be indorsed on the policy in writing, is a condition for the benefit of the company, and we think there can be no doubt that a party to a contract may waive a stipulation or condition made in its favor. (*Ruthven v. American Fire Ins. Co.*, 102 Iowa, 550, 71 N. W. 574; *Orient Ins. Co. v. McKnight*, 167 Ill. 190, 64 N. E. 339; *Benjamin v. Palatine Ins. Co.*, 80 App. Div. 260, 80 N. Y. Supp. 256; *Thompson v. Traders' Ins. Co.*, 169 Mo. 12, 68 S. W. 889; Clement on Fire Insurance, 416; *Home Mut. Ins. Co. v. Nichols* (Tex. Civ. App.), 72 S. W. 440.)

The case of *Iverson v. Metropolitan Life Ins. Co.*, 151 Cal. 746, 91 Pac. 609, and many cases cited and relied upon by

appellant, are clearly distinguishable from the case under consideration. In that case, the applicant made a false answer. In the case at bar such is not the case. In that case the soliciting agent knew the answer was false and that the answer covered up such falsity, and gave no information to the company that it was false. The very reverse is true in this case. In that case the answer was full and complete. In this case one answer is meaningless and the other inquiry not answered. In that case the company acted on the truth of the answer. In this case the company knew the questions were not answered. In that case the applicant warranted that if any answer be false the policy would be void. Not so here. The company wrote the policy with full information before it. In that case the court held that mere knowledge of the agent would not bind the company and did not amount to a waiver. Here we have knowledge and acts of the company clearly showing the waiver. In that case, to have sustained the contention of waiver would have been a fraud upon the company. In this case, to repudiate the acts constituting a waiver would be a fraud upon the insured.

This class of cases is clearly distinguishable, both upon the facts and principle, from the case at bar.

The discussion herein necessarily includes the right to introduce oral testimony to prove a waiver. (*Fireman's Fund Ins. Co. v. Norwood,* 69 Fed. 71, 16 C. C. A. 136; *Association v. Wickman,* 141 U. S. 564, 12 Sup. Ct. 84, 35 L. ed. 860; *Insurance Co. v. Pearce,* 39 Kan. 396, 7 Am. St. Rep. 557, 18 Pac. 291; *Pechner v. Phoenix Ins. Co.,* 65 N. Y. 195.)

We have carefully considered this case, and believe that this discussion disposes of all questions presented by the appeal, except such as were considered and finally decided in the former appeal in this case. We find no error in the record and the judgment is affirmed. Costs awarded to respondents.

Ailshie, C. J., concurs; Sullivan, J., did not sit at the hearing.