353 P.2d 648

Florence LEWIS, as Administratrix of the Estate of Wesley E. Lewis, deceased, and Florence Lewis, an Individual, Plaintiff-Respondent,

v.

SNAKE RIVER MUTUAL FIRE INSURANCE COMPANY, a mutual insurance company, Defendant-Appellant.

No. 8823.

Supreme Court of Idaho.

June 24, 1960.

Arthur Staton, Jr., Pocatello, for appellant.

**332**

R. Don Bistline, Pocatello, for respondent.

TAYLOR, Chief Justice.

Plaintiff (respondent) and her deceased husband were the owners of community property consisting of 1.78 acres of land, located about a mile and a quarter from McCammon, in Bannock county. The deceased husband had procured fire insurance, in the total amount of $3,000, upon the dwelling house located upon the property, from defendant (appellant) as insurer. The policy was procured through the Don C. Minor agency. It was issued in the name of deceased husband alone as the insured. The term of the insurance was from September 6, 1954 to September 6, 1957, and the premium was prepaid in full. The insured husband died, intestate, January 11, 1956.

The Hinckley agency in Pocatello purchased the business of the Don C. Minor agency. Thereafter one, Hill, a partner in the Hinckley agency, on or about March 22, 1956, contacted plaintiff and proposed a sale to her of additional insurance covering the household goods located in the insured dwelling. Plaintiff advised Hill that she was not in good health, and had been

injured while engaged in her employment; that she was then working only part time; that she had her late husband's funeral costs and other bills to pay; and that she was at the time unable to pay for the additional insurance. Hill then urged that she could not afford to be without the insurance; that by writing it in connection with, and for the unexpired term of, the insurance on the house, the premium would be only about $10; that she would be given time to pay the premium; and that it would be agreeable if she paid it when she was able to do so. Plaintiff then agreed to the additional insurance. Accordingly, under date of March 22, 1956, the Hinckley agency issued an endorsement to the plaintiff providing for insurance on household contents in the sum of $2,000 and increasing the principal amount of the existing policy from $3,000 to $5,000 for an additional premium of $9.94. At the same time the agency issued a second endorsement changing the name of insured from "W. E. Lewis" to "Mrs. Florence E. Lewis." Thereafter, the agency repeatedly billed plaintiff for, and Hill called on her a number of times in an effort to collect, the additional premium. Plaintiff never denied or repudiated the obligation and continued to promise to pay as soon as she was able.

Within 45 days to two months following the issuance of the additional insurance the Hinckley agency paid the premium due thereon to defendant.

October 22, 1956, the Hinckley agency mailed notice of cancellation to plaintiff, advising plaintiff of cancellation of the insurance policy effective five days after service of the notice, and that the pro rata premium for the unexpired term would be refunded on demand, and demanding return of the policy. Plaintiff received this notice October 24, 1956. January 5, 1957, the Hinckley agency mailed to plaintiff its check for $3.02, representing unearned premium. Plaintiff accepted and cashed the check, explaining, "I didn't know what else to do with it." June 8, 1957, fire completely destroyed the dwelling and its contents. Plaintiff at the time was hospitalized in Salt Lake City.

Plaintiff brought this action in both her individual capacity and as administratrix of the estate of her deceased husband, to recover the face amount of the policy Thereafter, the defendant discovered that the amount refunded to plaintiff for unearned premium had been erroneously calculated upon the "short rates" basis, rather than the "pro rata" basis, as required by the policy, and defendant then tendered to plaintiff the additional sum of $2.43 to make up the full amount of unearned premium. Plaintiff refused this tender.

■ Defendant demurred to plaintiff's complaint on the ground of misjoinder of parties plaintiff. Defendant assigns as error the order of the court overruling the

**334**

demurrer. The ruling was correct. The property insured and the policy itself, being community property, and the husband having died intestate, the plaintiff became the sole heir to the husband's share of the community assets. I.C. § 14–113. She is the party in interest and the party affected by the action (I.C. § 5–606) both in her individual and in her representative capacity.

The cause was tried to the court sitting without a jury. Findings, conclusions and judgment were entered in favor of plaintiff. Defendant appealed.

Defendant assigns as error the findings supporting the trial court's conclusion that the attempted cancellation was ineffective, and that the policy was in force and effect at the time of the loss.

■■■■ The court found that the Hinckley agency had agreed that plaintiff could pay the premium for the additional insurance "when she was able", with no definite date fixed; plaintiff was unable to pay the premium prior to the date of the purported cancellation; after payment of the premium by the agency to the insurance company, plaintiff's obligation was to the agency on an unsecured open account; the original policy and the endorsements thereon were destroyed in the fire; the agency did not have possession thereof and therefore had no lien thereon; there is no evidence that the defendant ever directed or authorized the Hinckley agency to issue the notice of cancellation; though the agency acted in the name of the defendant, its action in issuing the notice of cancellation was for the sole purpose of collecting its commission on the sale of the additional $2,000 of insurance, and the unpaid earned premium on the additional coverage; these sums were collected by the agency by applying unearned prepaid premium on the original $3,000 policy; and that the household goods destroyed by the fire were of a value greater than the $2,000, and the dwelling at the time it was destroyed was of a value in excess of $3,000.

From its findings the court concluded that defendant was entitled to an offset against the plaintiff of $3.02; that there was due from plaintiff to the Hinckley agency on open account the sum of $9.94; that plaintiff by accepting the $3.02 of unearned premium did not ratify the purported cancellation; that the agency did not have authority to cancel the policy in the name of the defendant for the purpose of collecting commissions or premiums due it; that the policies were in full force and effect at the time of the loss, and that there was due and owing thereon from defendant to plaintiff the sum of $5,000. The court further found that the agency in soliciting the additional insurance, at no time advised plaintiff of the customs or practices of those engaged in the insurance business with respect to cancellation or the collection of

unpaid premiums or commissions from unearned premiums on prepaid insurance.

■ The court's findings are supported by the evidence. As witnesses, both Hill and Hinckley corroborated the testimony of plaintiff that the agency agreed to await payment of the premium until she was able to pay it. Hinckley testified that the agent, Hill, advised him of plaintiff's financial condition and that "we would have to give her a little time." Such testimony supports the conclusion that the agency extended credit to the plaintiff beyond the customary period, and thus made her a debtor of the agency rather than of the insurance company. Perea v. State Life Ins. Co., 15 N.M. 399, 110 P. 559; United States Life Ins. Co. v. Bernert, 166 Or. 44, 87 P.2d 774; Berryman v. Southern Surety Co., 285 Mo. 379, 227 S.W. 96; Nall v. Great Northern Ins. Co., Mo.App., 135 S.W.2d 392; Wytheville Insurance & Banking Co. v. Teiger, 90 Va. 277, 18 S.E. 195; Williams v. Empire Mut. Annuity & Life Ins. Co., 8 Ga.App. 303, 68 S.E. 1082; Elkins v. Susquehanna Mut. Fire Ins. Co., 113 Pa. 386, 6 A. 224; Lebanon Mut. Ins. Co. v. Humes, 113 Pa. 591, 8 A. 163, 57 Am.Rep. 511; Train v. Holland Purchase Ins. Co., 1875, 62 N.Y. 598; Buckley v. Citizens' Ins. Co., 188 N.Y. 399, 81 N.E. 165, 13 L.R.A.,N.S., 889; Fidelity & Casualty Co. of New York v. Willey, 3 Cir., 25 C.C.A. 593, 80 F. 497; Stuyvesant Ins. Co. v. Sussex Fire Ins. Co., 3 Cir., 90 F.2d 281; Tarleton v. DeVeuve, 9 Cir., 113 F.2d 290, 132 A.L.R. 343; Sheldon v. Connecticut Mut. Life Ins. Co., 25 Conn. 207, 65 Am.Dec. 565.

As to the estoppel urged against plaintiff, or her acquiescence in the cancellation by the acceptance of the $3.02 refund, the evidence is conclusive to the effect that the plaintiff did not understand that the "new insurance" became a part of the original insurance policy, or that the unearned premium on the original policy could be applied to the payment of the premium for the additional insurance, or that the original insurance could be cancelled for her failure to pay the premium on the additional coverage. She testified that when she received the notice of cancellation she thought it had to do only with the insurance on the household goods. The evidence shows that plaintiff had little understanding of business and particularly of insurance; that she was in poor health and had undergone three major operations in addition to a personal injury, with the result that her memory of the transactions involved was poor.

"Insured may waive proper cancellation, or ratify a defective or informal cancellation and become bound thereby, but such waiver or ratification must be made by insured with knowledge of the material facts and of his rights." 45 C.J.S. Insurance § 452, p. 100.

Here plaintiff acted without knowledge of either the facts or her rights. There was no waiver or ratification by her. Chase v. National Indemnity Co., 129 Cal.App.2d 853, 278 P.2d 68; nor was she estopped.

Moreover, in October, 1956, she had commenced the probate of her husband's estate, so that she could borrow money thereon to pay her bills. Letters were issued to her November 15, 1956. Hence, it is apparent that at the time of the notice of cancellation, October 22, 1956, plaintiff was unable to pay the premium. Her failure to protest or immediately challenge the purported cancellation is explained by her expressed belief that it affected only the insurance on the contents, and that she still had the protection of the insurance on the house for which her husband had paid in full.

■ Whether intentionally or not the agency had misled plaintiff to believe and rely upon the promise to carry her insurance until she was able to pay the premium. The foregoing considered in connection with the failure of the agency to explain to plaintiff that she was in danger of losing all her insurance for failure to pay the additional premium, renders the attempted cancellation highly inequitable. It became in fact an attempt to perpetrate a constructive fraud upon plaintiff. Stearns v. Williams, 72 Idaho 276, 240 P.2d 833; Thomas v. Thomas, 27 Okl. 784, 109 P. 825, 113 P. 1058, 35 L.R.A.,N.S., 124, 133; In re Arbuckle's Estate, 98 Cal.App.2d 562, 220 P.2d 950, 23 A.L.R.2d 372; Devers v. Greenwood, 139 Cal.App.2d 345, 293 P.2d 834; 37 C.J.S. Fraud § 2 c.; 23 Am.Jur., Fraud & Deceit, § 4.

■ In urging as error the finding that defendant did not direct or authorize the agency to cancel the insurance, defendant calls attention to the evidence that cancellations are made customarily by the agency through which the insurance is written, and that in this case the defendant had in fact ratified the acts of the agency. The fact that the defendant is here defending upon the ground of the cancellation, is proof of its ratification thereof. Thus, the company assumes the position of having acted through the agency to serve the purpose of, and for the benefit of, the agency. In so doing the company binds itself by the same principal of estoppel which would prevent the agency from effecting cancellation, assuming it had authority to do so, on its own account.

■ The trial court awarded plaintiff $1,000 attorney's fee for the prosecution of the action in the district court, under I.C. § 41–1403. Plaintiff prays an allowance of an additional $500 for defending the judgment upon this appeal. We conclude that an additional fee should be allowed and that the sum requested is reasonable.

The cause is remanded with directions to the trial court to increase the judgment by

the amount of $500 fee for plaintiff's attorney. As so modified, the judgment is affirmed.

Costs to respondent.

SMITH, KNUDSON, McQUADE and McFADDEN, JJ., concur.