124 P.3d 1028

Carole J. SHOUP, as Personal Representative of the Estate of Donald H. Harmon, Plaintiff–Appellant,

v.

UNION SECURITY LIFE INSURANCE COMPANY, a Delaware corporation, Defendant–Respondent,

and

U.S. Bank National Association, a North Dakota corporation, Linda Buster, John Does I–X, and John Doe Corporations XI–XX, Defendants.

No. 31431.

Supreme Court of Idaho, Idaho Falls, September 2005.

Nov. 23, 2005.

Aherin, Rice & Anegon, Lewiston, for appellant. Darrel W. Aherin argued.

Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Idaho Falls, for respondent. Bradley J. Williams argued.

BURDICK, Justice.

This case concerns whether Donald H. Harmon (Harmon) was covered under a credit life insurance policy issued to him by Union Security Life Insurance Company (Union Security) through U.S. Bank National Association (U.S. Bank or The Bank). Following Harmon's death, his estate was denied benefits under the policy. The Harmon estate brought suit against Union Security, but the district court granted summary judgment in favor of the insurer. We reverse the district court's grant of summary judgment and remand for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In April, 2000, U.S. Bank employee Linda Buster (Buster) traveled to the elder care facility in Salmon, Idaho where Harmon lived and sold him a $35,000 home equity loan secured by a deed of trust. Harmon requested a credit life insurance policy for the balance of the loan as part of the package. U.S. Bank was authorized to offer credit life insurance through Union Security, and so Buster gave Harmon application forms from Union Security to complete. One of these forms was a "Statement of Debtor's Physical Condition." Asked his age, Harmon truthfully reported on the form that he was sixty-seven. One of the questions on the form listed several types of health problems and asked if the applicant had suffered from any of those problems in the previous five years. Harmon truthfully checked the box for "yes." Towards the bottom of the form it stated "[e]vidence of insurability satisfactory to the Company means that I have truthfully answered 'no' to the above questions. Untruthful answers may result in the denial of claims." Harmon and Buster both signed the form.

U.S. Bank later issued Harmon a "Certificate of Insurance" showing April 17, 2000 as the "effective date" of the policy. Along with his "account/loan number," his correct age, and other information, one box on the certificate gave the "maximum issue age" as "65." Below the portion of the certificate giving basic information, the certificate laid out in small type an extensive inventory of additional information about the policy. This information included statements such as the following: "The insurance begins on the Effective Date of this certificate shown in the Schedule," which was April 17, 2000. It continued, "[i]f we have been paid the monthly premiums, the person or persons named in the Schedule are insured subject to the terms of this Certificate and a Group Policy issued to the Creditor.... The insurance will stop on your monthly billing date after ... you reach the termination age [66] shown in the Schedule for the coverage...." Harmon's daughter Carol Shoup (Shoup) asserts Harmon told her of the loan and the insurance policy. According to Shoup's account, approximately one week after Harmon obtained the loan Buster went over the loan paperwork with her. Shoup alleges that Buster expressed surprise that Union Security extended coverage to Harmon, but confirmed that coverage was granted. Some days later, Shoup reviewed the loan and insurance documents on her own and noted that the insurance policy purported to provide no coverage to those over the age of sixty-five. Shoup alleges that because her father was already sixty-seven, she telephoned Union Security to make certain that coverage was actually being provided. Ac-

cording to Shoup, a Union Security telephone representative assured her that there was coverage and that the age limit did not apply to the policy issued to her father.

At the time of the loan, Harmon authorized loan payments as well as credit life insurance premiums to be deducted automatically from his bank account each month. Loan payments were deducted from his bank account, but insurance premiums were not.

Harmon died eleven months later, in March, 2001. Shoup, as personal representative of his estate, brought a claim with Union Security. Union Security denied the claim, arguing that coverage never existed. In her capacity as personal representative of Harmon's estate, Shoup then brought suit against Union Security in the Seventh District Court in and for Lemhi County. The district court granted summary judgment to Union Security regarding the existence of an enforceable contract of insurance.

Shoup filed a timely appeal from that judgment that is now before this Court.

## II. STANDARD OF REVIEW

In reviewing a ruling on a summary judgment motion, this Court employs the same standard as that used by the district court. *Sprinkler Irrigation Co. v. John Deere Ins.*, 139 Idaho 691, 695, 85 P.3d 667, 671 (2004). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving part is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "Judgment shall be granted to the moving party if the nonmoving party fails to make a showing sufficient to establish an essential element to the party's case." *McColm–Traska v. Baker*, 139 Idaho 948, 950–51, 88 P.3d 767, 769–70 (2004). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Sprinkler Irrigation Co.*, 139 Idaho at 695–96, 85 P.3d at 671–72.

## III. ANALYSIS

Union Security contends that coverage was never extended to Harmon because the text of the certificate of insurance it issued him and the terms of the policy for which he applied excluded a man of his age and physical condition. In response, Shoup argues that because she and her father relied on statements and conduct by Union Security and its representatives that coverage had been granted, Union Security must be estopped from denying coverage under the written policy terms.

Idaho law acknowledges that insurance contracts are not entered into in the same fashion as other contracts. *Lewis v. Continental Life & Accident Co.*, 93 Idaho 348, 350–51, 461 P.2d 243, 245–46 (1969). Although it is "not the law in Idaho that an insured has no obligation to read his policy," *Foster v. Johnstone*, 107 Idaho 61, 67, 685 P.2d 802, 808 (1984), Idaho courts recognize that a consumer generally cannot be expected to understand the terms and defenses of an insurance contract, that he frequently enters into a contract before even being provided a copy of the policy, and that he is not normally in a position to negotiate its written terms. *Lewis*, 93 Idaho at 351, 461 P.2d at 246.

### A. Estoppel

The doctrine of estoppel prevents the insurer from denying coverage based on printed provisions in the policy that conflict with representations by the insurer or its agents on which the policy holder reasonably relied. *Id.* Therefore, before we may look to the language contained in the policy and the certificate of insurance in this case, it is first necessary to determine whether Union Security is estopped from raising that language as a defense to liability. *Id.* at 355, 461 P.2d at 250.

In *Lewis v. Continental Life & Accident Co.*, 93 Idaho at 351, 461 P.2d at 246, this Court articulated a doctrine of estoppel specifically applicable to insurance contract disputes. *Foster*, 107 Idaho at 67, 685 P.2d at 808 (stating that the estoppel test in *Lewis* is used for insurance contract cases). The Court in *Lewis* wrote:

This Court, recognizing the character of the written insurance "contract," has long held, where a policy holder is induced to enter into contract in reasonable reliance on promises of or agreements with the soliciting representative of that insurance company thereby leaving the insured person or property otherwise unprotected, and the company profits from that change of position, that the insurance company is estopped to deny the liability for which it actually contracted by raising provisions from its own printed policy form.

93 Idaho at 351, 461 P.2d at 246.

Two portions of the *Lewis* test are at issue in this case: (1) reasonable reliance, and (2) the "profit" component.[1] The first of these questions regards whether a jury could find that Harmon's reliance on the alleged statements and conduct of Union Security representatives suggesting that coverage had been extended was reasonable. The second question concerns whether Harmon's grant of access to his checking account satisfied the requirement that the company to be estopped "profit[ed] from [its] change of position...." If, in this case, both questions are answered in the affirmative, Union Security will be estopped from denying the liability for which it actually contracted based on the printed contents of its policy. *See id.* We will consider each question in turn.

### 1. Reasonable Reliance

■ The parties disagree regarding whether Harmon's reliance on representations of coverage offered by Union Security and its agents was reasonable. Whether a party's reliance was reasonable is a question of fact for the jury. *Young v. State Farm Mut. Auto. Ins. Co.*, 127 Idaho 122, 126, 898 P.2d 53, 57 (1995).

In order to show a complete lack of evidence suggesting reasonable reliance, Union Security argues that the certificate of insurance it issued to Harmon is of no significance in and of itself. Union Security takes issue with Shoup's use of *Horn Maint. Corp. v. Aetna Cas. & Sur. Co.*, 225 A.D.2d 443, 444,

639 N.Y.S.2d 355 (App.Div.1996), for the proposition that a certificate of insurance may be used as evidence of a contract of insurance. Union Security quotes the following language from *Horn*: "[o]n summary judgment, a certificate may be sufficient to raise an issue of fact, especially where additional factors exist favoring coverage, *but it is not sufficient, standing alone as it does here, to prove coverage as a matter of law.*" 225 A.D.2d at 444 (citations omitted) (emphasis shown as added by Union Security). However, unlike in *Horn* here it is the insurer that moved for summary judgment. As the non-moving party, Shoup is under no obligation to *prove* coverage as a matter of law. *See* I.R.C.P. 56(c). It is quite enough for her to use the certificate to show a disputed issue of material fact. *Id.*

■ Union Security next argues that because the terms of the policy outlined in the certificate of insurance unambiguously disqualified Harmon from coverage, as a matter of law it cannot have been reasonable for him to have relied upon the certificate. That argument is unpersuasive. Language from the policy or certificate cannot be used to determine *as a matter of law* whether coverage was extended unless the question of estoppel has been resolved in the insurer's favor. *See Lewis*, 93 Idaho at 355, 461 P.2d at 250 (stating that "the equitable device of estoppel may not be thwarted by a provision in a policy drafted by the party to be estopped").

■ It is not the duty of the insurance applicant to determine if he is to be issued a policy under the insurer's rules. *Charlton v. Wakimoto*, 70 Idaho 276, 284, 216 P.2d 370, 374 (1950). In *Charlton*, this Court stated:

As for the rule book of the Company making the insured ineligible for insurance, we conclude it is the duty of the Company to enforce its own rules and regulations and that its agents should certainly be more familiar with the rules than the insured.... [Granting a policy in violation of those rules] was an act of the Company

---

1. Other concerns, such as whether Harmon's "person or property [was] otherwise unprotect-

ed" are not issues in this appeal.

and not the insured, and is insufficient to defeat recovery on the policy.

*Id.* Consequently, whether Union Security *should have* entered into an insurance contract in light of the written terms does not determine the question of whether it actually did so. Moreover, it was Union Security or its agents, who, despite policy terms the insurer now asserts unambiguously disqualified Harmon, chose to issue him a certificate of insurance and allegedly gave Harmon and his daughter other assurances of coverage. Shoup has offered evidence that Union Security proved unable to enforce its own rules and policy provisions, and Idaho law does not permit us to place the burden to do so on the insured.

Similarly, in *Allen v. Phoenix Assur. Co.,* 14 Idaho 728, 738–39, 95 P. 829, 832 (1908), an insurer argued that because the truthful answers provided by the insureds on their application did not meet the written conditions of the issued policy and no coverage should have been granted, it rendered that policy void. This Court determined that once an application is taken and accepted, it becomes part of the contract. *Id.* at 740, 95 P. at 832–33. The conditions of the policy must then be construed along with the conditions of the application, and if possible, effect must be given to both. *Id.* This Court went on to write:

> The issue of a policy upon an application is a waiver of all matters of sufficiency of form or disclosures called for by the questions. The [insureds], when they received the policy from the [insurer] on a written application containing certain questions, had a right to presume that the policy was in accord with the application, and that the answers and disclosures made in the application were sufficient to bring them the insurance desired, and they were not required to return the policy because of conditions in it which might seem to be in conflict with the application.

*Id.* at 740–41, 95 P. at 833 (internal citation omitted).

However, the language on the certificate may be *considered by a fact finder* to the extent it might influence the reasonableness of Harmon's reliance under all the surrounding circumstances. *See Foster,* 107 Idaho at 67, 685 P.2d at 808; *Young,* 127 Idaho at 126, 898 P.2d at 57. Thus, for the purpose of the *Lewis* estoppel analysis, even if the certificate language unambiguously denied coverage it would not resolve the question of reasonableness; it would simply be another piece of evidence to be weighed by the fact finder. *Young,* 127 Idaho at 126, 898 P.2d at 57 (stating that "receipt of a copy of the policy or other written documents [suggesting lesser coverage than the insurance agent's oral representations] may be considered by the jury on the issue of reasonable reliance, but it does not foreclose as a matter of law the jury's consideration of estoppel").

Union Security next refers to two notes in Harmon's claim file written by company employees after his death. Union Security maintains the notes prove Harmon was told by the loan officer that coverage was denied, and that such fact is undisputed.[2] Contrary to Union Security's position, Shoup presented evidence disputing the assertion of fact made in the notes. The notes in question are contradicted by Shoup's account of events, as well as by Buster, the loan officer referred to in the notes, who testified in her deposition she never told Harmon that coverage was denied.

Union Security argues that Shoup improperly relies on a different note from Harmon's claim file. In that note, a Union Security employee wrote: "Doni/Liz please review info recvd [sic] from creditor. The insured signed and requested single life covg. [sic] The premiums were never billed, but all docs [sic] show coverage. Recommend paying the claim. The insured *checked yes on the health stmt [sic] so we can't investigate.*" Union Security correctly observes that the note cannot have established reliance by Harmon because it was written after his death. However, the note is significant for a different reason. It indicates Union Security's internal documentation reflected that Harmon was granted cov-

2. The question of whether these notes would be admissible at trial was not raised in the present appeal, and therefore this Court expresses no opinion on the matter.

erage, adding credibility to Shoup's account of what she was told by Buster and a Union Security telephone representative.[3]

In opposition to summary judgment, Shoup presented evidence from which a fact finder could conclude that Harmon justifiably relied on statements and conduct by Union Security and its representatives. Shoup notes that despite Harmon's truthful answers on his "Statement of Debtor's Physical Condition," Buster nevertheless submitted his application for coverage. Doing so suggested to Harmon that his application would be considered. Additionally, Shoup alleges Buster and a Union Security telephone representative verbally confirmed that coverage had been granted. Shoup also observes that Harmon was never told his application was denied and that he was given a certificate of insurance, which is commonly taken as proof of coverage. Viewed in the light most favorable to Shoup, the non-moving party, the evidence she offered is sufficient to show a genuine issue of material fact regarding the reasonableness of Harmon's reliance, thereby precluding summary judgment on that point. I.R.C.P. 56(c).

## 2. "Profit" To The Insurer

In *Lewis*, this Court included as an element of estoppel that the company to be estopped must "profit[ ] from [its] change of position." 93 Idaho at 351, 461 P.2d at 246. Here, Union Security contends this element makes payment of premiums a *prima facie* element of estoppel. Since Union Security never collected its premiums from Harmon,

the company contends it cannot be estopped from denying liability.

For its position Union Security cites to *Lewis* and *Mull v. United States Fidelity & Guaranty*, 35 Idaho 393, 206 P. 1048 (1922). In both *Lewis* and *Mull*, the insurer was estopped from raising its own policy language as a defense to liability, and in both cases the insured had paid premiums. *Lewis*, 93 Idaho at 352, 461 P.2d at 247; *Mull*, 35 Idaho at 401, 206 P. at 1050. In neither case, however, did this Court go beyond the facts to state a general rule requiring premium payment as a *prima facie* element of insurance estoppel. Indeed, in *Lewis v. Snake River Mut. Fire Ins. Co.*, 82 Idaho 329, 336, 353 P.2d 648, 652 (1960), because the soliciting agent told the insured she did not need to pay the premium until she was able to do so, the insurer was estopped from raising nonpayment as a defense to liability.

In this case, Union Security's failure to collect its premiums is a lapse not attributable to Harmon. If it was reasonable for Harmon to rely on the representations of coverage made by Union Security and its agents, it was also reasonable under the specific circumstances of this case for him to believe he was making timely payments to Union Security. Harmon authorized the deduction of credit insurance premiums from his bank account. The Bank deducted money from Harmon's account, although these deductions included only Harmon's payments on the loan itself, not the credit insurance premiums. Union Security and its agents, having already made representations of coverage, and having failed to deny Harmon's

---

3. Union Security argues that promises made to Shoup are irrelevant because she has not demonstrated any personal detriment from the insurer's denial of coverage. That argument misses the mark, because whether Shoup has suffered a personal detriment is unrelated to whether Harmon relied on promises made to his daughter by company representatives. This Court has written that

> [i]f a promise is made to one party for the benefit of another, it is often foreseeable that the beneficiary will rely on the promise. Enforcement of the promise in such cases rests on the same basis and depends on the same factors as in cases of reliance by the promisee.

*Zollinger v. Carrol*, 137 Idaho 397, 400, 49 P.3d 402, 405 (2002) (quoting Restatement (Second)

of Contracts § 90, cmt. c (1981)). Because a jury could find that Harmon foreseeably relied on promises made to his daughter by Union Security representatives, a fact finder may consider statements made to Shoup as well as representations made to Harmon.

Union Security also argues that Shoup cannot raise on appeal the issue of statements made by the insurer and its agents to *her*, as opposed to statements made to her father, because she did not raise the issue below. Contrary to Union Security's assertion, the issue of estoppel arising from statements made to Shoup was raised in her Second Amended Complaint; it has therefore been addressed by this Court.

**158**

application or cancel his policy, also neglected to notify him it was not receiving his automated payments. In this instance, Union Security cannot use its own failure to collect the benefits of its bargain with Harmon as a shield to liability.

We leave to the fact finder on remand the question of whether Harmon's reliance on Union Security's representations to him and his daughter was reasonable. But, if Harmon's reliance is found to have been reasonable, Union Security's failure to collect its premiums bars the company from raising nonpayment as a defense.

## B. Attorney Fees

Union Security requests attorney fees on appeal pursuant to I.C. § 12–121. Idaho Code § 12–121 permits an award of attorney fees in a civil action to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation. *Mutual of Enumclaw Ins. Co. v. Pedersen*, 133 Idaho 135, 139, 983 P.2d 208, 212 (1999). Union Security is not the prevailing party on appeal, and therefore no award of attorney fees is warranted.

## IV. CONCLUSION

*Shoup* offered sufficient evidence that Harmon reasonably relied on representations of coverage by Union Security and its agents to raise a genuine issue of material fact precluding summary judgment. I.R.C.P. 56(c). Additionally, under the specific circumstances of this case, Union Security's own failure to collect premiums Harmon authorized to be drawn from his bank account bars the insurer from raising non-payment of premiums as a defense to liability. We therefore reverse the district court's grant of summary judgment, and remand this case for further proceedings consistent with this opinion. Costs to the Appellant.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES concur.