IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 32886

| JIM and ROSE ROUSE, husband and wife, | ) | |
|---|---|---|
| | ) | |
| Plaintiffs-Appellants, | ) | Boise, February 2007 Term |
| | ) | |
| v. | ) | 2007 Opinion No. 58 |
| | ) | |
| HOUSEHOLD FINANCE CORPORATION, and JOHN DOE INSURANCE COMPANIES, dba HOUSEHOLD FINANCE, | ) ) ) ) | Filed: March 29, 2007 Stephen W. Kenyon, Clerk |
| | ) | |
| Defendants-Respondents. | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Honorable G. Richard Bevan, District Judge.

District court decision granting summary judgment, <u>affirmed.</u>

Dehaan & Associates, Twin Falls, for appellants. Harry Clifford Dehaan, VI argued.

Naylor & Hales, P.C., Boise, for respondents. Colleen Denise Zahn argued.

_____

BURDICK, Justice

Jim and Rose Rouse (collectively the Rouses, individually Jim and Rose) brought suit against Respondents, Household Finance Corporation and Household Life Insurance Company (collectively HFC) for, *inter alia*, breach of an insurance contract and negligence. The Rouses appeal from the district court's grant of HFC's motion for summary judgment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2003 the Rouses received a home equity loan through Household Finance Corporation. In connection with this loan the Rouses also obtained credit life and disability insurance. No insurance application was needed because of the small amount of the loan. The Rouses received certificates of insurance for these insurance policies at the closing of the loan, both of which provided that the insurance would automatically end without notice on the date the loan was refinanced.

The following February, Household Finance Corporation approached the Rouses about refinancing their loan. Angela Hasher, a Household Finance Corporation employee, explained

1

that interest rates had decreased and it would be advantageous for the Rouses to refinance; the Rouses would be (and were) able to pay off other bills, receive almost $2000 in cash, and decrease their monthly payment. They decided to refinance and closed on the new loan on March 4, 2004. The Rouses also wished to obtain credit life and disability insurance in connection with this loan. Since this loan was larger than the 2003 loan, underwriting was required.

At this closing, the Rouses signed insurance applications for credit life and credit disability insurance. The Rouses made a loan payment, which included insurance premiums for both credit life and credit disability insurance. On April 19, 2004, the Rouses were informed that their insurance applications had been denied due to Jim's health issues.[1] The Rouses then received a refund of the premiums they had paid. In June 2004 Jim was diagnosed with terminal brain cancer.

In their amended complaint, the Rouses allege breach of contract, estoppel, fraud in the inducement and negligence. HFC then moved for summary judgment, and the district court granted this motion and dismissed the Rouses' complaint. The Rouses now timely appeal that decision and order to this Court.

## II. ANALYSIS

Although the district court dismissed their entire complaint, the Rouses argue only that the district court erred in granting summary judgment to HFC on their breach of contract and negligence claims. We will address each of these issues and then turn to HFC's request for attorney fees on appeal.

When reviewing a motion for summary judgment, this Court uses the same standard employed by the trial court when deciding such a motion. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997). "[I]f the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" summary judgment is proper. I.R.C.P. 56(c). The burden is on the moving party to prove an absence of genuine issues of material fact. *Evans v. Griswold*, 129 Idaho 902, 905, 935 P.2d 165, 168

---

[1] Jim had a kidney removed due to cancer in July 2001. However, on the application he disclosed only that he had had the kidney removed, not that he had been diagnosed with cancer. Jim revealed this diagnosis in response to HFC's investigation of his insurance application.

(1997). In addition, this Court views the facts and inferences in the record in favor of the non-moving party. *Id*.

**A. Contract Claims**

The Rouses argue that an oral contract of insurance was created and that HFC must be bound by the representations Hasher made to them. Moreover, they argue that their assumption that they had insurance was reasonable based on HFC's course of conduct. In support of their contention that HFC entered into an insurance contract with them, the Rouses point this Court to a line of cases recognizing that insurance companies are bound by the acts and representations of their agents, *Benner v. Farm Bureau Mutual Insurance Co. of Idaho, Inc*., 96 Idaho 311, 312, 528 P.2d 193, 194 (1974), and that these oral contracts are subject to special rules of construction, *Gordon v. Three Rivers Agency, Inc*., 127 Idaho 539, 542, 903 P.2d 128, 131 (Ct. App. 1995).

While these statements of law are correct, the Rouses' reliance on them is misplaced as the Rouses assume that a contract was formed and point only to cases where a contract had been formed. Under Idaho law, insurance agents can form oral contracts of insurance. *Foremost Ins. Co. v. Putzier*, 102 Idaho 138, 143, 627 P.2d 317, 322 (1981). However, there must be a meeting of the minds to form a contract. *Inland Title Co. v. Comstock*, 116 Idaho 701, 703, 779 P.2d 15, 17 (1989). A meeting of the minds is evidenced by a manifestation of intent to contract which takes the form of an offer and acceptance. *Id*. The Rouses, however, have offered no evidence that a contract was formed.

Here, there is simply no evidence that there was a meeting of the minds. The language of the applications the Rouses signed at closing makes clear that the applications may or may not be approved. These applications were titled "Notice of Proposed Group Disability Insurance" and "Notice of Proposed Group Life Insurance." They both provided that if the application was approved, the effective date would be the date of application, that if the application was not approved "any premium . . . paid will be refunded . . . or credited to your account," and that the insurance benefits summarized on the application "will only apply if your application for insurance is approved." Likewise, the Optional Credit Insurance Disclosure attached to the refinancing agreement provided: "there will be no insurance until the insurer has approved your application (if one is required). . . ." The Rouses were later sent a letter indicating that their applications had been denied and received a refund of their premiums.

3

The Rouses fail to provide evidence of acceptance. In opposition to HFC's motion for summary judgment, the Rouses offered a single citation to the entire deposition of Rose Rouse. However, a review of that entire deposition fails to reveal a single instance of Rose testifying that an agent of HFC told the Rouses their application had been approved. Instead, Rose testifies only that she assumed the insurance coverage would continue. Rose first testified:

> Well, I assumed that since we had the insurance and we were just redoing it, that we'd still have it. Because she told me that we wouldn't have to redo—we wouldn't have to have a new appraisal done on the house. We would just be able to refinance and the interest rate would be lower, and just—You know, the fact that they could end the insurance never entered the conversation.

When asked, "who said that you had the insurance?" Rose replied:

> Well, they were just letting us—You know, I mean, I assumed that we had it; because we filled out the papers and they told us how much it was going to be and asked us what we wanted. And other than that, I mean, I can't really say any special person said, you know, that—we talked to would have said that we had it.

Likewise, Rose stated in her testimony that she did not question anyone at HFC about signing papers acknowledging that "there will be no insurance until the insurer has approved your application. . . ." Rose did not question this, "Because I was just so sure that we had insurance. I mean, there wasn't any doubt in my mind that we wouldn't get it."

Therefore, because there is no evidence of a meeting of the minds between the Rouses and HFC, no insurance contract was formed. Thus, we affirm the district court decision granting summary judgment to HFC on the Rouses' contract claims. Moreover, since there are no facts indicating that a contract was formed, we need not reach the Rouses' remaining arguments on their contract claim.

**B. Negligence**

The Rouses argue that the district court erred when it determined that HFC did not breach any duty owed them. They contend that there are genuine issues of material fact regarding whether HFC, acting as an insurance agent, breached the duties it owed them.

Idaho law recognizes a "special relationship" between the insurer and the insured and also recognizes that this relationship requires that "the parties deal with each other fairly, honestly, and in good faith. . . ." *Featherston v. Allstate Ins. Co.*, 125 Idaho 840, 843, 875 P.2d 937, 940 (1994) (citing *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 99, 730 P.2d 1014, 1019 (1986)) (internal citations omitted).

4

The Rouses maintain that HFC breached the duties it owed them and offered the affidavit of Larry Stumpf, an insurance agent, to support their allegations. This affidavit provides:

> 6. Conduct that would fall below the requisite standard of care for an insurance agent selling insurance in Twin Falls, Idaho would include advising a client to change policies or to obtain other insurance and then allowing the previous insurance to cancel or lapse before ensuring the new coverage was approved and in effect.

> 7. In other words, if the client loses insurance coverage because the agent did not ensure continuity of coverage, the agent's conduct by not ensuring continuity of coverage falls below the requisite standard of conduct.

Stumpf's affidavit, however, offers no evidence that HFC breached its duty to deal fairly, honestly and in good faith. There is no evidence in the record that HFC advised the Rouses to change policies and then "allowed" their insurance to be cancelled. Hasher did not advise the Rouses to change their insurance policy nor could she allow or prevent their previous insurance from lapsing—by contract that policy ended when the Rouses refinanced.

Moreover, no other evidence before this Court suggests that HFC breached the duty to deal fairly, honestly and in good faith. While the Rouses complain that they were never informed that their insurance policies could be cancelled if they refinanced, the 2003 insurance documents specifically provide that the coverage will be cancelled if the loan is ever refinanced, and Rose admits she read these documents. Moreover, as discussed above, all the evidence in the record indicates that the Rouses were informed they were only applying for coverage. As such, there is no genuine issue of material fact as to the Rouses' negligence claim, and the district court correctly granted summary judgment to HFC on this issue.

## C. Attorney Fees

HFC requests attorney fees pursuant to I.C. § 12-121. Under that section, we may award attorney's fees to the prevailing party "if the Court finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." *Gallagher v. State*, 141 Idaho 665, 669, 115 P.3d 756, 760 (2005). The Rouses did not bring or pursue this appeal frivolously, unreasonably or without foundation. Therefore, we decline to award attorney fees.

## VII. CONCLUSION

We affirm the decision of the district court granting summary judgment to HFC. There is no evidence in the record that an insurance contract was formed between HFC and the Rouses.

5

Likewise, there is no evidence that HFC breached any duties in negligence it owed the Rouses. We decline to award attorney fees; costs to Respondents.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES, **CONCUR.**