## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 39784

| | | |
|---|---|---|
| WILLIAM S. SHAPLEY, an individual, | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CENTURION LIFE INSURANCE COMPANY, a foreign corporation, and WELLS FARGO FINANCIAL IDAHO, INC., an Idaho corporation, | ) ) ) ) | Boise, June 2013 Term<br><br>2013 Opinion No. 80<br><br>Filed: June 25, 2013<br><br>Stephen W. Kenyon, Clerk |
| | ) | |
|     Defendants-Respondents, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOES, individually, does 1 through X, and JOHN DOE BUSINESS ENTITIES, does 1 through X, | ) ) ) | |
| | ) | |
|     Defendants. | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas Joseph Ryan, District Judge

District court order granting summary judgment, _affirmed._

Pedersen & Whitehead, Twin Falls and Richard S. Owen, Nampa, for appellant. Brian J. Hilverda argued.

Hawley, Troxell, Ennis & Hawley, Boise, for respondents. Kenneth C. Howell argued.

---

BURDICK, Chief Justice

William Shapley appeals the Canyon County district court's dismissal of his breach of contract and negligence claims against Centurion Life Insurance Company ("Centurion") and Wells Fargo Financial ("Wells Fargo"). William Shapley and his wife Barbara Shapley applied for credit life insurance with Centurion on the same day they closed on a loan with Wells Fargo. Before Centurion approved their application, Mrs. Shapley passed away. After Centurion denied Mr. Shapley's claim for benefits, he brought several actions against both Centurion and Wells Fargo, which the district court dismissed on summary judgment. Mr. Shapley argues that this

1

dismissal was in error, as was the district court's refusal to allow him to amend his complaint to add an estoppel claim. We affirm the district court's decisions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 20, 2008, the Shapleys applied for a real estate loan with Wells Fargo. The Shapleys closed on the loan and submitted an application to Wells Fargo for a joint credit life insurance policy through Centurion on July 10, 2008. Upon submitting their application, the Shapleys were provided with a notice of insurance underwriting practices. The Shapleys did not pay a premium at that time, nor did the application papers require an upfront premium payment.

The application papers stated that the Shapleys would receive insurance coverage only if Centurion approved their application. Specifically, the application the Shapleys signed stated, "I understand that if my application for insurance is not approved by the insurance company, one or both of the coverages for which I have applied will not become effective and no charge will be made for that type of insurance." Additionally, the notice of insurance that the Shapleys received and signed on the same day explained the underwriting process. This document states:

> Your insurance application will be forwarded to our underwriting department to decide if we will approve the insurance coverage(s) you requested. However, the underwriter may first need additional information from you regarding your answers on the Health Statement. If so, we (or our representative) will contact you by telephone to obtain the information we need to make our decision. If we require a telephone interview and the interview is not completed for any reason we will not approve the insurance coverage(s) you requested.

Nancy Lunn, Centurion's Claims Manager and Underwriting Manager, explained in her deposition that Centurion had an underwriting procedures guideline that outlined when an interview with an applicant was required. She explained that "requirements for an interview are any yes answers on the health questions, age 55 or older, loan amount 75,000 or more, insurance added after loan date more than three months, answers changed from yes to no on the health statement."

Centurion never had a chance to have a phone interview with Mrs. Shapley. The day after the Shapleys closed on their loan, Mrs. Shapley suffered a brain hemorrhage from which she died four days later. Mr. Shapley contacted Centurion the same day to claim benefits in connection with Mrs. Shapley's passing. Centurion denied the claim because it never issued insurance on Mrs. Shapley's life. Centurion claims that Mrs. Shapley's application was tagged for a phone interview because she was over 55. Because this interview never took place

Centurion issued insurance solely to Mr. Shapley.

Mr. Shapley filed a complaint alleging breach of contract, bad faith, intentional infliction of emotional distress, negligence, misrepresentation, and fraud. He later sought leave from the court to amend his complaint to include a punitive damages claim, and defendants filed a motion for summary judgment. The district court took both of these motions under advisement following a hearing on July 28, 2011. In its November 4, 2011 Memorandum Decision, the district court granted summary judgment to Centurion and Wells Fargo finding that all of Mr. Shapley's claims depended on the existence of a contract to insure Mrs. Shapley's life and no such contract was made.

Later that month, Mr. Shapley filed a motion to amend his complaint to add an estoppel claim. On November 29, 2011, while that motion was pending, the district court entered a final judgment in favor of Centurion and Wells Fargo. Mr. Shapley then sought a reconsideration of the district court's summary judgment ruling. In doing so, Mr. Shapley argued that his negligence claim does not depend on the existence of a contract to insure Mrs. Shapley's life. In opposing reconsideration, Centurion and Wells Fargo contended that the negligence claim was barred by the "economic loss rule" even if not dependent on a contract to insure Mrs. Shapley's life.

On February 22, 2012, the district court entered an order denying Mr. Shapley's motions because his estoppel claim was futile and the economic loss rule barred any possible negligence claim not based on a contract. Mr. Shapley then filed a timely notice of appeal.

## II. STANDARD OF REVIEW

This Court's standard of review for a grant of dismissal on summary judgment was concisely summarized in *Harris v. State*:

> When reviewing a ruling on a summary judgment motion, this Court applies the same standard used by the district court. Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden of establishing the absence of a genuine issue of material fact is on the moving party. This Court liberally construes all disputed facts in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are drawn in favor of the nonmoving party. Summary judgment is improper if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.

3

147 Idaho 401, 404–05, 210 P.3d 86, 89–90 (2009) (internal citations and quotations omitted).

This Court reviews a district court's denial of a motion to amend a complaint to add additional causes of action for an abuse of discretion. *Taylor v. McNichols*, 149 Idaho 826, 832, 243 P.3d 642, 648 (2010). To determine whether a district court has abused its discretion, we consider:

> (1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason.

*Id.*

## III. ANALYSIS

**A. The district court correctly dismissed all of Mr. Shapley's claims on summary judgment.**

Because most if not all of the claims Mr. Shapley brought against Centurion and Wells Fargo are based on the premise that a contract existed between Centurion and Mrs. Shapley, we first address whether Mr. Shapley raised a material issue of fact as to the existence of this contract before addressing whether the district court erred in concluding that his negligence claim was conditioned on the existence of a contract.

1. Mrs. Shapley and Centurion did not enter into a binding credit life insurance contract.

For a contract to be formed there must be a meeting of the minds between the parties on all material terms to the contract. *In re Univ. Place/Idaho Water Ctr. Project*, 146 Idaho 527, 536, 199 P.3d 102, 111 (2008). "A meeting of the minds is evidenced by a manifestation of intent to contract which takes the form of an offer and acceptance." *Panike & Sons Farms, Inc. v. Smith*, 147 Idaho 562, 567, 212 P.3d 992, 997 (2009).

An application for insurance is generally just an offer, and "acceptance by the insurer is required for the completion of the insurance contract." 1A Couch on Ins. 3d § 11:4; *see also Rouse v. Household Fin. Corp.*, 144 Idaho 68, 70, 156 P.3d 569, 571 (2007) (finding that no contract was formed at the time of application when the language of the application "makes clear that the applications may or may not be approved"). This Court has previously recognized an exception to this rule when an application for insurance was ambiguous and required payment in full of the premium at the time of application. *Toevs v. W. Farm Bureau Life Ins. Co.,* 94 Idaho 151, 483 P.2d 682 (1971). In *Toevs*, the insurer required full payment of the premium when Toevs applied, and then issued a conditional premium receipt. This Court concluded that the

4

application's ambiguity as to when insurance coverage began and Toevs's initial payment of the full premium gave Toevs reason to believe that he was insured at the time he applied for credit life insurance. *Id.* at 154, 483 P.2d at 685. In reaching the decision in *Toevs*, we also noted that payment of the premium at the time of application provides obvious benefits to the insurer without providing any corresponding benefits to the applicant. *Id.* Thus, in *Toevs* the ambiguity as to the date coverage began, the payment of the premium at the time of application, and the insurer's use of a conditional premium receipt "created a temporary contract of insurance subject to a condition, i.e., rejection of Toevs's application by the insurance company." *Id.* at 155, 483 P.2d at 686.

The conditions that led this Court to adopt the doctrine of temporary insurance in *Toevs,* are not present in Mr. Shapley's case. There was no delivery of a conditional premium receipt to the Shapleys at the time the application for insurance was completed. Nor did the Shapleys pay a premium with their application. Although the application gave the date of application as the proposed effective date, it unequivocally stated that coverage was dependent on Centurion's approval of the Shapleys' application. Specifically, the application the Shapleys signed stated, "I understand that if my application for insurance is not approved by the insurance company, one or both of the coverages for which I have applied will not become effective and no charge will be made for that type of insurance." Additionally, the notice of insurance that the Shapleys received and signed on the same day as their application further explained that Centurion had to go through an underwriting process before their application could be approved. Unlike in *Toevs*, these documents were not ambiguous and it was not reasonable for the Shapleys to believe they were covered when they submitted their application without paying any premiums to Centurion. Accordingly, we decline to extend the temporary insurance doctrine from *Toevs* to Mr. Shapley's claim.

The Shapleys' application amounted to no more than an offer, which Centurion never accepted as to Mrs. Shapley. In this case as in *Rouse*, the application's language makes clear that the application may or may not be approved. *See* 144 Idaho at 70, 156 P.3d at 571. Therefore, we affirm the district court's decision that a credit life insurance contract between Centurion and Mrs. Shapley was never formed.

This conclusion does not conflict with any Idaho law as Mr. Shapley contends. Mr. Shapley first argues that a contract was formed when the Shapleys closed on their loan and

5

submitted their application to Centurion through Wells Fargo because I.C. § 41-2307 requires the term of credit life insurance offered in Idaho to begin on the date of the indebtedness. Idaho Code section 41-2307 states that:

> The term of any credit life insurance or credit disability insurance shall, subject to acceptance by the insurer, commence on the date when the debtor becomes obligated to the creditor, except that, where a group policy provides coverage with respect to existing obligations, the insurance on a debtor with respect to such indebtedness shall commence on the effective date of the policy.

Contrary to Mr. Shapley's argument, this section does not require an insurer to commence coverage on the date of indebtedness regardless of whether an application is accepted or rejected. The date of coverage is clearly conditioned on the insurer's acceptance of the application. *See* I.C. § 41-2307 ("The term of credit life insurance…shall, *subject to acceptance by the insurer*, commence on the date when the debtor becomes obligated to the creditor.…"). Section 41-2307 does not require that credit life insurance take effect automatically upon application. This conclusion is further supported, not contradicted as Mr. Shapley argues, by I.C. § 41-2308.

Idaho Code section 41-2308 requires a credit life insurance policy to be delivered on the date the indebtedness is incurred, except in certain circumstances like when payment for credit life insurance is separate from payment on the subject loan. I.C. § 41-2308(3), (4). Because the Shapleys' premium payments were separate from their loan payments, section 41-2308 only required Centurion to deliver "a copy of the application for such policy or a notice of proposed insurance" on the day the Shapleys closed on their loan. I.C. § 41-2308(4). This section requires the insurer to deliver the insurance policy to the debtor within thirty days of the date the indebtedness is incurred, but only "[u]pon acceptance of the insurance by the insurer." I.C. § 41-2308(4). By providing the Shapleys with a copy of their insurance application and a notice of insurance underwriting practices on the day their loan closed, Centurion fully complied with section 41-2308. Neither section 41-2307 nor section 41-2308 required Centurion to extend coverage to the Shapleys on the date their loan closed without first approving their application.

Finally, Mr. Shapley argues that it was unlawful for Centurion to have declined to insure Mrs. Shapley's life because she was unable to participate in an interview. Mr. Shapley contends that Centurion was limited to the written application including the "Health Statement" to determine eligibility for credit life insurance. He bases this argument on the following Idaho Department of Insurance credit life insurance regulation: "No statement made by a debtor shall

6

be used by the insurer as a basis for denying eligibility for coverage unless such statement is contained in a written application for insurance signed by the debtor." IDAPA 18.01.61.011. This regulation does not flatly limit an insurer's risk evaluation to reading the insured's application papers as Mr. Shapley appears to argue. The district court correctly held that the regulation bars the use of interview statements themselves as the basis for declining to issue credit life insurance, but interview statements may raise concerns that warrant investigation and ultimately result in a proper basis for declining to issue credit life insurance. Therefore, we affirm the district court's finding that no contract existed between Mrs. Shapley and Centurion.

2. Mr. Shapley waived review of the district court's dismissal of his negligence claim.

The district court's initial reason for granting summary judgment against Mr. Shapley's negligence claim was that it depended on a nonexistent contract to insure Mrs. Shapley's life. In seeking reconsideration, Mr. Shapley argued that his negligence claim does not depend on the existence of a contract. Ruling on Mr. Shapley's motion for reconsideration the district court concluded that Mr. Shapley had not argued a negligence claim independent of the contract, and even if Mr. Shapley had argued such a claim, it still would have been barred by the economic loss rule. Centurion and Wells Fargo contend that Mr. Shapley waived review of the dismissal of his negligence claim because he did not address the district court's application of the economic loss rule as a bar to his negligence claim in his opening brief. Mr. Shapley responds that he was not required to address this issue in his opening brief because judgment was never entered on this issue and Centurion and Wells Fargo sufficiently addressed this issue in their response brief to preserve it for appellate review.

Idaho Appellate Rule 35(a)(6) requires that the opening brief "contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." Thus, this Court has consistently held that an appellant's failure to address an independent ground for a grant of summary judgment in his opening brief and issue statement is fatal to the appeal. *Weisel v. Beaver Springs Owners Ass'n, Inc.*, 152 Idaho 519, 525, 272 P.3d 491, 497 (2012). In this case, the district court gave the economic loss rule as an alternate ground for dismissal of Mr. Shapley's negligence claim when it ruled on his motion for reconsideration almost three months after judgment was entered dismissing all of Mr. Shapley's claims. This judgment states that

7

"[a]ll of Plaintiff's claims are based on the allegation that a contract of insurance was in force and Plaintiff's case against Defendants is dismissed in its entirety with prejudice." Mr. Shapley contends that because this judgment was never amended to include the alternate ground for the district court's dismissal of his negligence claim, no final judgment was reached as to this claim.

The district court was not required to amend the final judgment to include the economic loss rule as an alternate ground. Indeed, Idaho Rule of Civil Procedure 54(a) prohibits the inclusion of the court's legal reasoning in a final judgment. *See* I.R.C.P. 54(a) ("A judgment shall not contain … the court's legal reasoning…."). Accordingly, we have previously held that "an order granting summary judgment does not constitute a judgment." *Capstar Radio Operating Co. v. Lawrence*, 149 Idaho 623, 625, 238 P.3d 223, 225 (2010) (quoting *In re Universe Life Ins. Co.*, 144 Idaho 751, 756, 171 P.3d 242, 247 (2007)). The district court's judgment in this case only needed to state that all of Mr. Shapley's claims were dismissed with prejudice, which it unequivocally did. Therefore, the district court was not required to amend the judgment to include language regarding the economic loss rule as an alternate ground for dismissal.

The district court's order regarding Mr. Shapley's motion for reconsideration clearly gave the economic loss rule as an alternate ground for dismissal of his negligence claim. Mr. Shapley did not address this issue in his opening brief and merely addressing it in the reply brief is not sufficient to preserve it. *See Weisel*, 152 Idaho at 525, 272 P.3d at 497. We hold that Mr. Shapley failed to adequately address the economic loss rule as a bar to his negligence claim and thus has waived the matter on appeal.

**B. This Court upholds the district court's denial of Mr. Shapley's motion to amend.**

In conjunction with his request for reconsideration, Mr. Shapley also asked the district court to allow him to amend his complaint to include an estoppel theory to prevent Wells Fargo and Centurion from claiming that no contract had been formed. He argues on appeal that both estoppel and quasi-estoppel apply in this case. However, because Mr. Shapley did not argue the application of quasi-estoppel below, we will not address it on appeal. *See KEB Enterprises, L.P. v. Smedley*, 140 Idaho 746, 752, 101 P.3d 690, 696 (2004) ("This Court's longstanding rule is that it will not consider issues raised for the first time on appeal."). The district court did not allow Mr. Shapley to amend his complaint to add an estoppel claim because "[w]ithout the existence of a contract, the legal theory of estoppel cannot apply." The district court based its conclusion on this Court's language that the "purpose of the doctrine of estoppel in insurance

cases is to enforce the contract as originally agreed upon by the parties." *Lewis v. Cont'l Life & Acc. Co.*, 93 Idaho 348, 353, 461 P.2d 243, 248 (1969). In *Lewis*, this Court further explained the application of the doctrine of estoppel in the insurance context:

> [W]here a policy holder is induced to enter into [a] contract in reasonable reliance on promises of or agreements with the soliciting representative of that insurance company thereby leaving the insured person or property otherwise unprotected, and the company profits from that change of position, that the insurance company is estopped to deny the liability for which it actually contracted by raising provisions from its own printed policy form.

*Id.* at 351, 461 P.2d at 246.

The district court is incorrect that an estoppel claim in the insurance context requires the existence of a contract. Rather, estoppel requires proof of two elements, neither of which is dependent upon the existence of a contract: (1) reasonable reliance on inducements in the form of promises or agreements with the insurance company and (2) the insurer's realization of a profit from its change in position. *Shoup v. Union Sec. Life Ins. Co.*, 142 Idaho 152, 154, 124 P.3d 1028, 1030 (2005).

Indeed, this Court has reversed a district court's grant of summary judgment in a case where the insurer argued that no insurance contract existed between the decedent and the insurer. *Id.* In *Shoup*, Union Security contended that coverage was never extended to the decedent, William Harmon, because the text of the certificate of insurance it issued him and the terms of the policy for which he applied excluded a man of his age and physical condition. *Id.* In response, Harmon's estate argued that because he relied on statements and conduct by Union Security and its representatives that coverage had been granted, including the issuance of an insurance certificate, Union Security must be estopped from denying coverage under the written policy terms. *Id.* This Court concluded that Harmon's estate had offered sufficient evidence to show a genuine issue of material fact regarding the reasonableness of Harmon's reliance, thereby precluding summary judgment on that point. *Id.* at 157, 124 P.3d at 1033. Although an insurance policy was issued in *Shoup*, the existence of the contract was not required for estoppel to apply. Rather, the question was whether Harmon's reliance on his insurer's representations that coverage existed was reasonable. The same question is raised in this case—whether the Shapleys' reliance on alleged representations that coverage began on the date the loan closed was reasonable.

Mr. Shapley alleges two instances were Centurion and Wells Fargo made representations

that coverage began on the date the Shapleys submitted their application: (1) the proposed effective date of the policy was July 10, 2008, and (2) Mr. Ellison told him following Mrs. Shapley's death that coverage began on that date. Because Mr. Ellison's statements were made after the alleged effective date of coverage and Mrs. Shapley's death, Mr. Shapley could not have relied on these statements when he submitted his application. Thus, Mr. Shapley's reliance is entirely based on the application listing the policy's proposed effective date as July 10, 2008.

Generally, the reasonableness of the insured's reliance is a question of fact for the jury. *Young v. State Farm Mut. Auto. Ins. Co.*, 127 Idaho 122, 126, 898 P.2d 53, 57 (1995). However, in light of all of the application's clear language that coverage did not begin until Centurion approved the Shapleys' application and the fact that the Shapleys did not pay any premiums along with their application, the proposed effective date alone does not raise a material issue of fact as to whether the Shapleys' reliance was reasonable. Unlike the insurer in *Shoup*, Centurion never issued a certificate of insurance covering Mrs. Shapley. Moreover, the proposed effective date of the policy by itself is not a promise or inducement on Centurion's part. The very language indicates a proposed or anticipated date of coverage, not one that the parties had agreed upon.

While the district court incorrectly concluded that there must be a contract for estoppel to apply, the denial of Mr. Shapley's motion to amend was nonetheless appropriate because his estoppel claim was futile. *See Martel v. Bulotti*, 138 Idaho 451, 453, 65 P.3d 192, 194 (2003) ("This Court may uphold decisions on alternate grounds from those stated in the findings of fact and conclusions of law on appeal."). Therefore, we affirm the district court's denial of Mr. Shapley's motion to amend because neither Centurion nor Wells Fargo promised the Shapleys that coverage would begin on the date they submitted their application. To the degree that including the proposed effective date amounted to a promise that coverage would begin on that date, Mr. Shapley's reliance on this one promise is not reasonable in light of the application's clear language that coverage did not begin until Centurion approved the Shapleys' application.

## IV. CONCLUSION

We affirm the district court's dismissal of all of Mr. Shapley's claims on summary judgment. We also affirm the district court's denial of Mr. Shapley's motion to amend his complaint. Costs to respondents.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**